Morton *v.* Yell

5-3522                                  388 S. W. 2d 88

Opinion Delivered March 22, 1965.

*Rex W. Perkins* and *Walter R. Niblock* for appellant.

*Thomas Pearson* and *James R. Hale,* for appellee.

George Rose Smith, J. J. L. Jones died testate in April, 1963, leaving his homestead in Prairie Grove to the trustees of two cemeteries. Ten months after Jones's will was probated the appellants, Ken Morton and his wife, filed this suit in equity against the cemetery trustees and the executor of Jones's will, asking for specific performance of an oral contract, made in 1960, by which Jones had agreed to leave the property in question to the Mortons in return for their taking care of him for the rest of his life.

This appeal is from a decree finding that the Mortons failed to prove their case by clear and convincing evidence.

The cemetery trustees first contend that the Mortons are barred by the statute of nonclaim, having failed to assert any cause of action against the executor until more than six months after the publication of the notice to creditors. Ark. Stat. Ann. § 62-2601 (Supp. 1963). This contention was rejected in *Fred* v. *Asbury,* 105 Ark. 494, 152 S.W. 155, where we said: ''The statute of nonclaim is urged as a bar to the relief sought. This statute provides that all claims against estates of deceased persons shall be barred unless they are properly authenticated and presented to the executor or administrator within one year after the grant of letters; but this is not a proceeding to enforce a claim or demand against the estate of Jacob Fred, deceased, but is one to determine the rights of the parties to this suit to the property in question. The statute of nonclaim does not refer to claims of title or for the recovery of property for the reason that claims of such a character can not in any just sense be said to be claims against the estate of the deceased.''

In this respect the law has not been changed by the Probate Code, which provides: ''A valid agreement made by a testator to convey property devised in a will previously made shall not revoke the previous devise, but such property shall pass by the will subject to the same remedies on the agreement against the devisee as might have been enforced against the decedent if he had survived.'' Ark. Stat. Ann. § 60-412 (Supp. 1963). Under this statute the appellants' remedy is not against the estate but against the devisees. A court of equity is the proper forum for their suit for specific performance. *Merrell* v. *Smith,* 226 Ark. 1016, 295 S.W. 2d 624.

On the merits the Mortons insist that the chancellor erred in holding that their testimony about the oral agreement was inadmissible under the dead man's statute, because, they argue, the executor is not a necessary party to the case. We need not explore this connection, for we think that even without this testimony the making

and performance of the contract were established by clear and convincing proof.

The Mortons called the executor as their own witness, as they were entitled to do under the dead man's statute; for if he was in fact a necessary party his testimony was rendered admissible by the fact that he was called as a witness by his adversary. Ark. Constitution, Schedule, § 2. The executor had long been a friend of the decedent and does not appear to have had the slightest reason for misrepresenting the facts. He testified that Jones told him that he had decided to give the Mortons the property "to take care of him at home." The executor also identified a codicil, signed by the testator, in which he directed that the home property be conveyed to the Montons "for their taking care of me in my declining days." The codicil was ineffective, because there were no attesting witnesses, but it was admissible as a statement against interest made by the appellees' predecessor in title at a time when he was the owner of the land. *Pitts* v. *Pitts,* 213 Ark. 379, 210 S.W. 2d 502.

There is an abundance of disinterested proof that the Mortons did take care of Jones in the last years of his life. Inasmuch as the Mortons were not related to Jones and had no duty to look after him the fact that they did faithfully care for him is a circumstance strongly corroborating the existence of the oral agreement. The defendants below offered no testimony at all; so the plaintiffs' persuasive evidence stands uncontradicted. We consider it sufficiently clear and convincing to satisfy the Mortons' burden of proof.

Reversed.