Glenn Miller BRATCHER, Jan Daggett Bratcher, Layne
Bratcher, Arthur B. Bratcher, Jr. *v.* Norma Jean
BRATCHER

CA 91-23                                    821 S.W.2d 481

Court of Appeals of Arkansas
Division II
Opinion delivered December 26, 1991
[Rehearing denied January 29, 1992.]

*Hoover, Jacobs & Storey*, by: *John Kooistra III* and *Lawrence J. Brady*, for appellants.

*Meeks and Carter, P.A.*, by: *W. Russell Meeks III*, for appellee.

GEORGE K. CRACRAFT, Chief Judge. Appellants Glenn Miller Bratcher, Jan Daggett Bratcher, Layne Bratcher, and Arthur B. Bratcher, Jr., appeal from an order of the Pulaski County Probate Court ordering distribution of certain funds in the estate of their deceased father, Arthur B. Bratcher, to appellee Norma Jean Bratcher, his surviving spouse. Appellants make several arguments for reversal, but we do not reach the merits of the case because we have determined that the probate court was wholly without jurisdiction to resolve these issues. In order to understand the decision we have reached, a brief statement of some of the essential background of the matter is necessary.

Arthur Bratcher and Norma Jean Bratcher were married in 1977. At that time, Arthur Bratcher's total net worth consisted of 175 shares of stock in Twin City Beverage Company (TCB) and Twin City Development Company (TCD). Prior to the marriage, the parties entered into an antenuptial agreement under which appellee agreed that in the event of Bratcher's death, she would forego all of her rights as surviving spouse in exchange for a "dower interest in the increase in value [after the date of the marriage] of the husband's surviving ownership interest" in those two corporations. The agreement also awarded her several other items that are not in dispute here. In 1979, Bratcher sold all but twenty-five shares of his interest in the two corporations for $500,000.00 in cash and a promissory note for $1,800,000.00 bearing interest at the rate of ten percent. He also received other related benefits that were not involved in this litigation. The remaining shares of TCB and TCD were converted into stock of D & F Corporation and finally into stock certificates representing seventy percent of the stock in White River Beverage Company. In 1982, Bratcher created a revocable trust to which the bulk of

his assets, including the White River Beverage Company stock, were eventually transferred. Appellants, Bratcher's children by a former marriage, were named as beneficiaries of the trust in the event of his death. No provision was made for appellee in that trust.

In 1988, Bratcher died leaving a will that contained no provision for appellee but left his entire estate to his children. Appellee filed a petition in probate court electing to take against the will. The decedent's children contested the petition, setting up the ante-nuptial agreement as a bar to her right to so elect. The probate court ruled that the agreement was valid and enforceable and served as a complete bar to appellee's right to elect to take against the will. That ruling is not challenged on appeal.

Subsequently, appellee filed a motion seeking to have the probate court interpret the antenuptial agreement and set out with specificity the amounts to which she was entitled thereunder. The probate court held hearings on these issues, and by subsequent orders found that all of the assets of the estate at the time of death were traceable to the proceeds of the sale of the TCB and TCD stock. The court then determined the value of the stock as of the date of the marriage and the increase in value since that date, and directed the executor to pay appellee one-third of the amount of that increase in value, plus interest from the date of the decedent's death. The probate court further determined that the White River Beverage Company stock, then in the hands of a trustee (who was not named as a party in the action), was also traceable to the proceeds of the TCB and TCD stock. The probate judge directed that the White River stock be obtained by the executor, that it be sold, and that one-third of the proceeds be delivered to appellee in accordance with the antenuptial agreement as he had interpreted it. He further ordered the executor to reimburse appellee for the expense incurred by her in obtaining the experts who assisted her in tracing and evaluating the assets involved, and calculating their value.

The order of the probate court determining that the contract was a valid one and effectively barred appellee's right to elect to take against the will was within the jurisdiction of the probate court and has not been appealed. However, we conclude that all the provisions of the subsequent order with respect to the tracing

of assets mentioned in the agreement and the award to appellee, calculated on the value of those assets, were wholly outside the jurisdiction of the probate court and void.

██ It has long been established that the probate court is a court of limited jurisdiction and has only such jurisdiction and powers as are conferred on it by the constitution or by statute, or are necessarily incident thereto. The extent of the jurisdiction of the probate court to resolve controversies between the personal representative and third persons or strangers to the estate has been the subject of exhaustive analysis by our courts in *Hilburn* v. *First State Bank*, 259 Ark. 569, 535 S.W.2d 810 (1976), and *Estate of Puddy* v. *Gillam*, 30 Ark. App. 238, 785 S.W.2d 254 (1990). These cases adhere to our long-established rule that probate courts have no jurisdiction to resolve disputes as to property rights between a personal representative and third persons claiming adversely to the estate. They reaffirmed previous holdings that persons who are neither heirs, devisees, distributees, nor beneficiaries of the estate are third persons and "strangers" within the meaning of this rule. *See Ellsworth* v. *Cornes*, 204 Ark. 756, 165 S.W.2d 57 (1942).

██ Here, Bratcher's will made no provision for appellee. The probate court had held that she was barred from asserting her wish to take against the will and could not participate in the distribution of the estate as surviving spouse. Appellee's claim was based entirely upon the antenuptial agreement and, therefore, was one by a third person or stranger to the estate. Probate courts lack jurisdiction to enforce such contracts. *See Morton* v. *Yell*, 239 Ark. 195, 338 S.W.2d 188 (1965); *Merrell* v. *Smith*, 226 Ark. 1016, 295 S.W.2d 624 (1956). The probate court likewise lacked the power to afford the equitable relief that it granted after tracing the assets into the hands of the trustee of the revocable trust and the executor. *See Hilburn* v. *First State Bank, supra; Estate of Puddy* v. *Gillam, supra.* Nor does the fact that part of the assets constituting the subject matter of the dispute was in the hands of the executor give the probate court jurisdiction to determine ownership as between the executor and a stranger. *See Ellsworth* v. *Cornes, supra.*

██ In oral argument, one of the attorneys stated that the trial court had jurisdiction because appellee's rights under the

agreement were in the nature of a "claim" against the estate, over which the probate court does have jurisdiction. The statutes relative to claims against an estate do not refer to claims of title or for recovery of property, for they are in no sense claims against the estate of a deceased. The statutes dealing with probation of claims against the estates of deceased persons include only those claims susceptible to probate and only specific money demands due or to become due. *Evans* v. *Hoyt*, 153 Ark. 334, 240 S.W. 409 (1922); *see Fred* v. *Asbury*, 105 Ark. 494, 152 S.W. 155 (1912).

■ Although the probate judge in his order recognized limitations on his jurisdiction, he failed to confine his rulings to these limitations. In any event, subject matter jurisdiction is always open, cannot be waived, and can be raised by this court *sua sponte*. It is not only the right but the duty of this court to determine whether there is jurisdiction of the subject matter. *Hilburn* v. *First State Bank, supra; Estate of Puddy* v. *Gillam, supra*. The parties cannot create jurisdiction where none exists.

Rulings in *Hilburn* and *Puddy*, and the cases cited therein, are controlling of the instant case, and it is our duty to follow them. We recognize that the distinction our courts have maintained between the powers of chancery and probate courts often results, as it has here, in a terrific waste of time and effort on the part of both the litigants and the courts. It is regrettable that this result must obtain even though the same person actually presides over both courts. However, the distinction is deeply rooted and of long standing in our jurisprudence. Since the adoption of Amendment 24 in 1938, the legislature has been vested with the power to remedy such results, including even the power to consolidate the two courts. However, it has not seen fit to exercise that power.

Reversed and remanded to the probate court with directions to enter an order not inconsistent with this opinion.

JENNINGS and ROGERS, JJ., agree.