Andrew PICKENS, Jane Pickens & Lyn Ashman *v.*
Freddie BLACK, Executor

93-718                                         872 S.W.2d 405

Supreme Court of Arkansas
Opinion delivered March 28, 1994

*The McMath Law Firm*, by: *Sandy S. McMath*, for appellant.

*Ramsay, Bridgeforth, Harrelson & Starling*, by: *William C. Bridgeforth* and *David R. Bridgeforth*, for appellee.

THOMAS B. BURKE, Special Justice. Appellants are the surviving children of the decedent, R.A. Pickens. The decedent died testate, and appellants are neither beneficiaries under his will nor creditors of the estate. Appellee is the executor of the decedent's estate and is the son-in-law of the decedent's surviving spouse. His mother-in-law and his wife were also named as defendants below. Appellants prosecute this interlocutory appeal from an order of the probate court denying appellants' petition to remove the executor, for an accounting, for restitution, and for appointment of an administrator in succession, and from orders denying appellants' petition for appointment of special counsel and denying reconsideration of the petition for appointment of special counsel. The underlying dispute stems from appellants' desire to cause a wrongful death action to be commenced against the decedent's attending physician, appellee, his wife, and mother-in-law. We hold that the order denying the petition to remove the executor is appealable, but that appeal is dismissed because appellants have no right to prosecute the appeal. In addition, the probate court lacked jurisdiction to order an accounting and restitution, and the denial of those remedies is affirmed. The denial of appellants' petitions for appointment of special counsel and the denial of reconsideration are not clearly erroneous, and, therefore, we affirm the orders of the probate court.

Appellants' petition for removal of the executor alleged that the decedent's death was caused by the wrongful conduct of the decedent's attending physician, along with that of appellee, his wife, and mother-in-law, and that the appellee-executor would not commence a wrongful death action because he, together with his wife and mother-in-law, were prospective defendants. Appellants submitted various affidavits and deposition testimony in support of their contention that the decedent's death was caused by such wrongful conduct. Appellants also alleged that the executor had mismanaged estate assets and therefore committed waste. Appellants sought to remove the executor and to cause a successor to be appointed for the purpose of prosecuting the action for wrongful death and to require an accounting and restitution. The probate court denied the petition, holding that appellants were not beneficiaries under the decedent's last will and testa-

ment and, therefore, lacked standing to petition for the removal of the executor.

■■ Rule 2 of the Arkansas Rules of Appellate Procedure governs when an appeal may be taken. Rule 2, however, preserves all statutory rights of appeal which were in existence at the effective date of the rules, July 1, 1979. Act 38 of 1973, which authorized this court to prescribe these rules, provides that rights of appeal shall continue as authorized by law. *See Court's Notes* to Ark. R. App. P. 2. Section 28-1-116 of the Arkansas Code Annotated of 1987 provides for appeals from probate causes involving wills, estates, and fiduciary relationships. It was enacted in 1949. It was in effect at the time Rule 2 was adopted and, therefore, determines whether there is a right of appeal in this case.

■ Section 28-1-116(a) of the Arkansas Code Annotated provides that a person aggrieved by an order of the probate court has a right to appeal. Subsection (b), however, provides that there is no right of appeal from an order appointing or refusing to appoint a special administrator. *In Re Estate of McLaughlin*, 306 Ark. 515, 815 S.W.2d 937 (1991). In addition, section 28-48-103(f) provides that an order appointing a special administrator shall not be appealable. Thus, any order of a probate court is generally appealable, but there can be no appeal from an order appointing or refusing to appoint a special administrator. In this case, the probate court order did more than refuse the appointment of a special administrator, *i.e.*, it refused to remove the executor because of an alleged conflict of interest. The denial or granting of a petition to remove an executor or administrator, other than a special administrator, is an appealable order. *See Barkley* v. *Cullum*, 252 Ark. 474, 479 S.W.2d 535 (1972); *Smith* v. *Rudolph*, 221 Ark. 900, 256 S.W.2d 736 (1953); Ark. Code Ann. § 28-1-116(a).(1987). That part of the order denying the removal of the executor is appealable.

■ Even though it is an appealable order, appellants have no right to appeal the order. The removal statute provides that an executor may be removed for various reasons, either upon the court's own motion or upon the petition of "an interested person." Ark. Code Ann. § 28-48-105 (a)(1) and (2) (1987). Appellants are not interested persons. The decedent died testate and left them nothing under the will. They are not heirs. They are

not creditors. They have no claim against the estate. The Probate Code defines "interested person" as "any heir, devisee, spouse, creditor, or any other having a property right, interest in, or claim against the estate being administered." Ark. Code Ann. § 28-1-102(a)(1) (1987). "Heir" is defined as "a person entitled by law of descent and distribution to the real and personal property of an intestate decedent." *Id.* at (a) (10). The statute regarding appointment of successor administrators also provides that one can be appointed upon petition of "an interested person." Ark. Code Ann. § 28-48-107(a) (1987).

■ Even though appellants are not interested persons, the trial court may have considered their petition for a successor personal representative as something that could cause the court to act on its own motion. It apparently did so and appointed a special administrator to investigate the wrongful death claim. This investigation was done by a person with no alleged conflict of interest and thus satisfied the concern about any possible conflict of interest on the part of the executor. The court did nothing further on its own motion. This action does not make appellants "interested parties," and it does not give them a right to appeal the court's refusal to appoint a successor representative.

■ Appellants assert an interest in the decedent's estate based on an alleged contract by the decedent to make a will devising certain real property to one of the appellants and based on their alleged interest as remaindermen in other real property whose interest vested upon the death of the decedent, who owned only a life estate. Appellants' claims to real property based on the alleged oral contract and their status as remaindermen are not claims against the estate, but represent claims made adversely to the estate by those who are not beneficiaries of the estate, *i.e.*, strangers to the estate. It has long been our rule that the probate court lacks jurisdiction to resolve such disputes. *Bratcher* v. *Bratcher*, 36 Ark. App. 206, 821 S.W.2d 481 (1991); *see also Morton* v. *Yell*, 239 Ark. 195, 388 S.W.2d 88 (1965). Thus, the probate court's denial of these remedies is affirmed.

After denying appellants' petition, the probate court appointed a special administrator, W. H. Dillahunty, a member of the bar of this court, for the purpose of determining whether an action for wrongful death should be commenced. The special

administrator's report stated that he had reviewed all of the materials and statutes relating to the contemplated wrongful death action, and he concluded that an action for wrongful death against the attending physician would likely survive a motion for summary judgment. He did, however, characterize the recoverable damages as considerably limited and pointed out that recovery was not certain and that there was no certainty a recovery would be of a sufficient amount to justify the expense of bringing the action. His report noted that potential damages were limited due to the widow's opposition to commencement of the action and due to the fact that no compensatory damages would be recovered in favor of appellants. The special administrator was of the opinion that independent counsel would not accept the case on a contingent fee basis, and he was unwilling to attempt to persuade competent counsel to accept the cause on such a basis.

After the filing of the special administrator's report, appellants filed a petition for the appointment of special counsel to commence the wrongful death action. The petition alleged that experienced trial counsel had agreed to commence the action on a contingent fee basis so as to result in no expense to the estate absent a recovery.

On the basis of the special administrator's report, the probate court entered an order denying the petition for appointment of special counsel and subsequently entered an order denying reconsideration of that petition. Appellants appeal from these two orders, and we address them on the merits because appellants are persons entitled to recover damages for mental anguish as the result of a wrongful death.

Appellants cite section 16-62-102(b) of the Arkansas Code Annotated of 1987, which provides that every wrongful death action shall be brought by and in the name of the personal representative of the deceased person. Appellants contend that the executor, together with his wife and mother-in-law, are prospective defendants in the wrongful death action which appellants seek to have commenced and that the probate court abused its discretion in refusing to appoint special counsel in light of the conflict between the executor's personal interest and his duties as a personal representative.

The probate court has broad discretion to appoint a special administrator. Section 28-48-103(a), in material part, provides:

> For good cause shown, a special administrator may be appointed. . . . after the appointment of an executor. . . . without the removal of the executor.

Ark. Code Ann. § 28-48-103(a) (1987). The appointment may be "for a specified time, to perform duties respecting specific property or to perform particular acts, as stated in the order of appointment." Ark. Code Ann. § 28-48-103(c) (1987).

In the case at bar, the probate court appointed the special administrator:

> for the sole purpose of determining whether or not a malpractice suit should be brought against Dr. Hoagland [the decedent's attending physician] and, further, to determine whether or not a wrongful death action should be initiated against Carol Pickens, Laurie Black and/or Freddie Black [the surviving spouse, her daughter, and appellee].

The effect of any conflict of interest of the executor in determining whether to initiate a wrongful death action was removed by the appointment of the special administrator. That appointment removed the executor from the decision-making process and ensured that the contemplated litigation would be considered independently and objectively. The special administrator's report is well-reasoned, and the probate court's orders based on it and denying the appointment of special counsel are not clearly erroneous. We do not reverse such orders unless clearly erroneous. *Newton County* v. *West*, 288 Ark. 432, 705 S.W.2d 887 (1986).

Affirmed.

CORBIN and BROWN, JJ., not participating.

HAYS and GLAZE, JJ., dissent.

TOM GLAZE, Associate Justice, dissenting. As I read the majority opinion, this court recognizes the appellants' (three surviving children of the decedent, R. A. Pickens) standing to question whether the executor, Freddie Black, had a conflict of interest that prohibited him from deciding whether a wrongful death

action should be brought against himself, his wife and mother-in-law and Dr. Hoagland, Pickens' attending physician at the time Pickens died. *See Wright* v. *Wright*, 248 Ark. 105, 449 S.W.2d 952 (1970). In his brief, Black relates that one of appellants' claims filed in a chancery court proceeding alleged that Black and his other co-defendants willfully caused the death of Pickens.[1] Assuming the validity of the appellants' claim, they, rather than Pickens' surviving spouse, would be heirs at law and share in any proceeds gained from a wrongful death suit.

Having accepted the appellants' standing in this cause — a point with which I agree — the majority opinion proceeds to dismiss the appellants' claim on the basis that the probate court acted properly when appointing a special administrator and in accepting his report and recommendation that a special counsel should not be authorized to pursue a wrongful death action. Based upon the evidence, I believe the probate judge was clearly wrong in adopting the special administrator's recommendation.

In their briefs, appellants set forth considerable evidence from which one could reasonably conclude Pickens' death at 12:20 a.m., April 10, 1991, resulted from an overdose of morphine prescribed by his treating physician, Dr. R. A. Hoagland. Pharmacists submitted affidavits reflecting their opinions that Pickens, considering his medical history, should not have been given morphine in any form. They also averred that morphine is a drug that should never be used without monitoring; nonetheless, Mr. Pickens was permitted to self-administer the morphine prescribed for him. Dr. Hoagland was shown previously to have had his license suspended by the Arkansas Medical Board, for prescribing excessive amounts of controlled drugs. Hoagland also had had his license suspended previously in Nebraska, as well as having been fined and placed on probation in Louisiana.

Dr. Hoagland's file reflected he had spoken to Mrs. Pickens the morning of April 9, 1991, and Mrs. Pickens informed Hoagland that Mr. Pickens had taken four morphine pills within a one-to-two hour period. Nevertheless, Hoagland waited another

---

[1]At this point, I note that Black asserts in his brief that the chancery court has dismissed with prejudice this and other claims since the filing of this appeal. Nothing in the record supports this assertion, nor, if it were true, if those rulings have been appealed.

nine and one-half hours to examine Mr. Pickens. Hoagland examined Mr. Pickens at his home at 12:00 a.m. on April 10, and Pickens died shortly thereafter (Hoagland said) from acute myocardial infarction.

Mr. David Demarco, a licensed embalmer, was called to the Pickens home on April 10th and was met, Demarco said, by a man who appeared to be a doctor. Demarco removed Pickens' body, took it to a Pine Bluff funeral home and embalmed it that day. Pickens' funeral was conducted the day after his death. The coroner stated that, although not required, the Desha County physicians almost always notify him of an attended death, but Hoagland did not do so in this situation.

Based upon the foregoing and other like statements, affidavits, testimony and records, four trial attorneys, Robert C. Compton, David A. Hodges, David N. Laser and Walter R. Niblock, opined that a wrongful death action may be sustained against Dr. Hoagland and those persons having the care, custody and control of Mr. Pickens prior to his death. Even the special administrator, who was appointed by the probate court to evaluate such a claim, believed a negligence suit against Hoagland would most likely survive any motion for summary judgment.

The special administrator advised against the estate pursuing a wrongful death suit because Mrs. Pickens "is obviously not in favor of the suit and the material does not indicate that there is a loss of earnings for which compensatory damages would lie in favor of [Pickens'] surviving children." In sum, the special administrator felt the expense to the estate could not be justified, and did not feel independent counsel would accept the case on a contingency basis. In rebuttal, appellants submitted Mr. David Hodges' affidavit stating he would accept litigating the case on a graduated contingency fee basis and advance case expenses to be reimbursed upon any recovery.

In my view of the foregoing evidence, I am unaware of any compelling reason why a special administrator should not file a wrongful death action. Everyone, including the special administrator, agrees a strong case of liability exists if a wrongful death suit is filed. The only reasons for rejecting the filing of suit given by the administrator was his suggesting that the prospective

amount of damages would be small and to pursue the litigation would cost the estate. Of course, the amount of damages recoverable in most law suits is unpredictable, and considering the circumstances and evidence in this case, the estimated amount of damages, in my opinion, should not be the deciding factor. As to costs of litigation, the estate is in a position to contract with an attorney, who may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter. *See* Rule 1.8(e) of the Ark. Rules of Professional Conduct. *But see also* 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering, A Handbook on the Model Rules of Professional Conduct* § 1.8:601, at 274 (2d ed. 1993).

In sum, while certainly the probate judge acted prudently in appointing a special administrator to evaluate the merits of filing a wrongful death action, I believe he should not have felt bound by the administrator's suggestion. To the contrary, the judge, considering the facts and evidence presented, was clearly erroneous to do so.

HAYS, J., joins this dissent.