881 S.W.2d 226 (1994)
In the Matter of the ESTATE OF Charles L. TUCKER, Deceased,
Laura Lucille WILLIAMS, Intervenor, By and Through Her Guardian, Gary TUCKER, Appellant,
v.
Lyle Robert TITTERINGTON, Co-Executor, Appellee.
No. CA93-884.
Court of Appeals of Arkansas, Division I.
August 24, 1994.
*227 Dennis C. Sutterfield, Russellville, for appellant.
Jon R. Sanford, Russellville, for appellee.
COOPER, Judge.
The appellee in this probate case, one of the executors of the estate of Charles Tucker, filed a petition to establish the estate's ownership of certain real property in Pope County. The appellant, who is the decedent's sister, responded to the petition by arguing that the unrecorded deed upon which the estate's claim was founded was never delivered. After a hearing, the probate court entered an order holding that title to the tract of land belonged to the decedent's estate. From that decision, comes this appeal.
For reversal, the appellant contends that the probate court lacked jurisdiction; that the relief afforded was outside the scope of the pleadings; that there was insufficient evidence to support a finding that the decedent did not intend to convey ownership of the property to the appellant; and that the probate judge erred in refusing to allow the testimony of Mary Ann Creemer. We find no error, and we affirm.
The record shows that Charles Tucker, the decedent, gave a recorded deed to the disputed property to the appellant in March 1982. On the same day, the appellant gave a deed to the same property to Charles. The latter deed was not recorded and, after Charles' death, it was found in a safe deposit box to which the appellant and Charles had access.
*228 Charles died in March 1992, and his 1991 holographic will was admitted to probate. In this will, Charles stated:
I would like for the home place and the Ted Martin place to be sold within a year, the money from these two places and the cattle and the money in the Bank is for a trust fund for Lucille. The interest from this money will pay for someone to take care of Lucy.... After Lucy [sic] death this trust fund is to be divided equal [sic] between my children June and her four children ten equal parts.
The appellee, Lyle Robert Titterington, one of the co-executors of the estate, filed a petition to establish the estate's ownership of the property in the probate court. The appellant responded by arguing that the unrecorded deed was never delivered.
At trial, the appellee testified that in 1969 he came to live with his aunt, June Eubanks, who lived with the decedent. Without objection by the appellant, the appellee testified that there was no question that Charles believed the property was absolutely his; that Charles had paid the taxes on the property; had made improvements on it without anyone's permission; and had lived there and treated the place as his own for years. The appellee also testified that the appellant never exhibited any conduct consistent with her claim of ownership. Also without objection by the appellant, the appellee testified that June had mentioned that, after Charles' first heart attack, he had put all of the property into Lucy's name and that he believed that Charles had created these deeds so that his V.A. benefits would not be disturbed. The appellee further testified that, in February 1992, he and Charles went through the provisions of Charles' will together. He stated that Charles told him the property had been put into Lucy's name but there was an unrecorded deed conveying the property to him in a lock box. The appellee testified that it was his belief that Charles did not want the appellant to have outright title to the property.
June Eubanks testified that the family regarded Charles as the owner of the property. She testified that Charles had a key to the safe deposit box and that, a day or two before he died, he told her that he needed to go there, get the deed out, and have it recorded. She stated that the appellant did give Charles a recorded deed to the southern forty acres of the tract of land for no consideration; this deed was recorded in 1984. She also testified that she believed the deeds had been created so that Charles would be able to continue to draw V.A. benefits. She testified that, before he died, Charles expressed a desire that his property should be sold; that the appellant should get the benefit of this property during her lifetime; and that the remainder should go to his other beneficiaries.
Mary Ann Creemer testified that Charles had told her that the home place was in Lucy's name so that it would stay in the family and that he considered it to be Lucy's property. At this point, the court sustained the appellee's objection to Ms. Creemer's testimony because the appellant had not listed her as a witness.
On May 14, 1993, after explaining in a letter decision that he believed Charles had never intended to convey the property to appellant, the probate judge entered an order finding that the property belonged to the estate.
For her first point on appeal, the appellant argues that the probate court was without subject matter jurisdiction to determine title to the real property because, even though the appellant was a beneficiary of Charles' will, she was not acting in that capacity by asserting her claim to this property. Therefore, she argues, she was a stranger to the estate and the appropriate jurisdiction for this action was in chancery.
The jurisdiction of the probate court is set forth in Ark.Code Ann. § 28-1-104 (1987), which states in part: "(a) The probate court shall have jurisdiction over: (1) The administration, settlement, and distribution of estates of decedents; (2) [t]he probate of wills...." Probate court is a court of limited jurisdiction and has only such jurisdiction and powers as are conferred on it by the constitution or by statute, or are necessarily incident thereto. Bratcher v. Bratcher, 36 Ark.App. 206, 209, 821 S.W.2d 481 (1991). The probate courts have no jurisdiction *229 to resolve disputes as to property rights between a personal representative and third persons claiming adversely to the estate; persons who are neither heirs, devisees, distributees, nor beneficiaries of the estate are third persons and "strangers" within the meaning of this rule. Id. at 209, 821 S.W.2d 481. Accord Hilburn v. First State Bank, 259 Ark. 569, 572-73, 535 S.W.2d 810 (1976); Ellsworth v. Cornes, 204 Ark. 756, 764-65, 165 S.W.2d 57 (1942); Estate of Puddy v. Gillam, 30 Ark.App. 238, 242, 785 S.W.2d 254 (1990). See also Deal v. Huddleston, 288 Ark. 96, 100, 702 S.W.2d 404 (1986).
Subject matter jurisdiction is always open, cannot be waived, can be questioned for the first time on appeal, and can be raised by this Court. Hilburn v. First State Bank, 259 Ark. at 576, 535 S.W.2d 810. Accord Arkansas State Employees Ins. Advisory Comm. v. Estate of Manning, 316 Ark. 143, 146, 870 S.W.2d 748 (1994); see Pickens v. Black, 316 Ark. 499, 504, 872 S.W.2d 405 (1994); Arkansas Dep't of Human Servs. v. Estate of Hogan, 314 Ark. 19, 22-23, 858 S.W.2d 105 (1993).
The appellant argues that Bratcher v. Bratcher, supra, supports her position. We do not agree. In Bratcher, we reversed an order of the probate court because it did not have jurisdiction to resolve all of the issues it had determined. There, Norma Jean Bratcher, the surviving spouse of the decedent, had entered into an antenuptial agreement with the decedent in which she had agreed to forego all of her rights as surviving spouse in exchange for a dower interest in the increase in value of the decedent's ownership interest in two corporations. Before his death, the decedent had sold most of his interest in the two corporations and had transferred the bulk of his assets to a trust benefitting his children by a former marriage; no provision was made for Mrs. Bratcher in that trust. The decedent's will also left his entire estate to his children and contained no provision for Mrs. Bratcher. She elected to take against the will, and the decedent's children set up the antenuptial agreement as a bar. The probate court held that the agreement barred her right to take against the will, and she did not appeal from that ruling. Mrs. Bratcher also filed a motion asking the probate court to interpret the antenuptial agreement and that court did so. On appeal, this Court held that the provisions of the order with respect to the tracing of the decedent's assets and the award to Mrs. Bratcher, calculated on the value of those assets, were wholly outside the jurisdiction of the probate court. This Court noted that the decedent's will made no provision for Mrs. Bratcher; she had not appealed from the probate court's holding that she was barred from taking against the will and could not participate in the distribution of the estate as surviving spouse. When Mrs. Bratcher sought interpretation of the antenuptial agreement by the probate court, it was clear that she had no rights as a surviving spouse and was not an heir, devisee, distributee, or beneficiary of the estate. Her action for interpretation of the antenuptial agreement was, therefore, one by a third person or stranger to the estate. Accordingly, this Court held that the probate court lacked jurisdiction to interpret and enforce that agreement.
However, the facts of Bratcher v. Bratcher are distinguishable from the situation presented in this case. Mrs. Bratcher did not appeal from the probate court's decision that the antenuptial agreement barred her right to take against the will; therefore, she had no rights as a surviving spouse and was not an heir or devisee of the estate when she sought interpretation of the antenuptial agreement. In the case at bar, however, the appellant is clearly a beneficiary of the will. Furthermore, the will in the case at bar directed that the property be sold in order to create a trust for the appellant's benefit. Under these circumstances, we hold that the probate court had subject matter jurisdiction in the case at bar.
Without citation to authority, the appellant also argues that only a chancery court could effectuate the equitable remedy sought by appellee. An assignment of error unsupported by convincing argument or authority will not be considered on appeal unless it is apparent, without further research, that the assignment of error is well taken. General Elec. Supply Co. v. Downtown *230 Church of Christ, 24 Ark.App. 1, 3, 746 S.W.2d 386 (1988). In any event, the cases discussed above clearly show that the probate court had the power to determine title to this property.
In her second point on appeal, the appellant argues that there are no pleadings to support the relief awarded the appellee. She contends that the delivery of the recorded deed from the decedent to the appellant was never pled as an issue. The appellant correctly states that, ordinarily, there must be pleadings in support of the relief awarded by the court. See Bachus v. Bachus, 216 Ark. 802, 804-05, 227 S.W.2d 439 (1950). Nevertheless, the appellee in the case at bar was permitted to introduce a substantial amount of testimony regarding the parties' intentions about the actual ownership of this property and the circumstances surrounding the making of the deeds without objection by the appellant. We have held that, although pleadings are required so that each party will know the issues to be tried and be prepared to offer his proof, Rule 15(b) of the Arkansas Rules of Civil Procedure provides that issues not raised in the pleadings, but tried by express or implied consent of the parties, shall be treated in all respects as if they had been pled. Mitchell v. Mitchell, 28 Ark.App. 295, 299, 773 S.W.2d 853 (1989). Under the circumstances of the case at bar, we think that the issue was tried by the implied consent of the parties and that the pleadings should therefore be treated as amended to conform to the proof. See Brown v. Imboden, 28 Ark.App. 127, 129, 771 S.W.2d 312 (1989).
Next, the appellant argues that the evidence does not support the decision of the probate court. We do not agree. In attempting to discern the real character of the transaction evidenced by the deeds, the probate court correctly considered all of the oral and written evidence and properly focused on the intent of the parties in the light of all attendant circumstances. See Bright v. Gass, 38 Ark.App. 71, 78, 831 S.W.2d 149 (1992). In carrying out the true intent of the parties, the probate court properly looked beyond the mere form in which the transaction was clothed and considered all the facts and circumstances, the conduct of the parties, and their relations to one another and to the subject matter. Id. Conclusions regarding the true intent of the parties primarily involve issues of fact. Id. Although probate cases are reviewed de novo on the record, this Court will not reverse the findings of the probate judge unless clearly erroneous, giving due deference to the probate judge's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. O'Flarity v. O'Flarity, 42 Ark.App. 5, 12, 852 S.W.2d 150 (1993). See also In re Estate of Spears, 314 Ark. 54, 59, 858 S.W.2d 93 (1993).
The fact that the appellant's deed to this property was recorded is not dispositive of this question. In Crowder v. Crowder, 303 Ark. 562, 564, 798 S.W.2d 425 (1990), the Arkansas Supreme Court stated that a presumption of valid delivery of a deed attaches when the deed is recorded. The Court also stated that, while the recording of a duly executed and acknowledged deed, as well as its being found in the possession of the grantee, raises the presumption of delivery, this presumption is not conclusively established when there is proof of other factors pertaining to the deed which may rebut the presumption. Id. There, the Court stated that a party's continuing to live in the home and pay taxes, insurance, and maintenance thereon are relevant considerations. Id. at 565-66. Ordinarily, the grantor's continued use of the property and the payment of taxes on it are evidence that would tend to rebut a claim of delivery. Id. at 566. In light of these considerations, we cannot say that the probate court erred in finding that Charles did not intend to convey ownership of the property to the appellant.
In her fourth point on appeal, the appellant argues, without citation to authority, that the probate court erred in refusing to allow the testimony of Mary Ann Creemer. The essence of the appellant's argument is that, by waiting to object until after Ms. Creemer had given some testimony, the appellee waived his right to object. We do not agree. It is true that a timely, specific objection at trial is essential in order to afford the *231 trial court an opportunity to rule, Bohannan v. Underwood, 300 Ark. 110, 111, 776 S.W.2d 827 (1989), and that, if an objection is not timely made, it will be considered as waived when the case reaches this Court on appeal. Umberger v. Westmoreland, 218 Ark. 632, 644, 238 S.W.2d 495 (1951). It is likewise true that, for the trial court to have committed reversible error, it must be said that timely and accurate objection was made, so that the trial court was given the opportunity to correct such error. Gustafson v. State, 267 Ark. 830, 837, 593 S.W.2d 187 (Ark.App. 1979). Nevertheless, we think that the appellant in the case at bar has failed to recognize the distinction between waiving an issue for purposes of appeal by virtue of failure to object, and waiver of the right to object at trial. Here, the probate judge was apparently given an adequate chance to correct the error and, thus, no waiver of the right to object occurred. A trial court's decision regarding whether a witness may give testimony rests largely within the sound discretion of the trial court, and its determination will not be reversed unless that discretion is abused. See Duncan v. State, 38 Ark.App. 47, 53-54, 828 S.W.2d 847 (1992). Under the circumstances, we cannot say that the probate judge abused his discretion in refusing to admit this testimony.
Affirmed.
JENNINGS, C.J., and ROGERS, J., agree.