IN THE MATTER OF THE GUARDIANSHIP
OF William VESA, An Adult Incapacitated Person

Helena M. Lairamore, *Appellant*

94-827 892 S.W.2d 491

Supreme Court of Arkansas
Opinion delivered February 20, 1995

*Karr, Huthinson & Stubblefield, P.A.*, by: *Michael E. Stubblefield*, for appellant.

*Morril Harriman, Jr.*, for Citizens Bank & Trust Co. of Van Buren, Arkansas.

*Bethell & Cromwell*, by: *Bruce H. Bethell*, for Alex Vesa, Jr.

*Paul R. Post*, Guardian of the Person in Succession.

DONALD L. CORBIN, Justice. Appellant, Helena M. Lairamore, is the former guardian of the estate and person of the ward, William Vesa, an adult incapacitated person. Appellant appeals three orders of the Crawford County Probate Court: (1) *order entered December 29, 1993* removing her as guardian of the ward's estate, (2) *order entered February 8, 1994* removing her as guardian of the ward's person, and (3) *order entered June 30, 1994* denying her motion for stay pending appeal, motion to reconsider previous rulings, and denying her effort to show cause why she should not be held in contempt of court for alleged failure to comply with court orders. We affirm the probate court's judgment in part, and dismiss the appeal in part.

The ward in this case, William Vesa, lived a reclusive life with his father, Alexander Vesa, on a nine-acre farm in Crawford County. On September 4, 1992, Alexander Vesa died intestate, survived by two sons: William and Alexander Vesa, Jr. (Alex), and two daughters: appellant and Patricia Taylor (Patricia). In addition to their inheritance from the decedent's probate estate, William and Alex, who had owned the farm jointly with the decedent as joint tenants with rights of survivorship, received that property outside probate. William's inheritance and interest in the farm ultimately constituted his guardianship estate which was valued in the initial estate inventory at $140,893.86.

On February 2, 1993, appellant petitioned the probate court to establish a guardianship for William's estate and person and to appoint her as guardian. A hearing was conducted. On May 6, 1993, the court filed an order finding that William was an incapacitated person in need of a guardianship for his estate and person. Over Alex's objection, the order confirmed appellant as the initial guardian of both.

On December 29, 1993, the court filed an order removing appellant as guardian of William's *estate*, appointing a local bank as successor guardian of the estate, and confirming that appel-

lant would continue to serve as guardian of William's person. The order also directed appellant to file her final accounting of the guardianship estate and to transfer the assets to the bank, as the successor guardian of William's estate. From this order, appellant filed her first notice of appeal in January 1994.

On February 8, 1994, the court filed an order removing appellant as guardian of William's *person*, and appointing William's guardian *ad litem*, attorney Paul Post, as successor guardian of William's person. In this order, the court found that appellant had failed to comply with its December 1993 orders to file her final accounting of the guardianship estate and to transfer its assets to the bank, and directed appellant to appear and show cause why she should not be held in contempt for this noncompliance. From this order, appellant filed her second notice of appeal in February 1994.

Pursuant to Ark. Code Ann. § 28-1-116 (1987 & Supp. 1993), a right to review by this court lies from all probate court orders, other than an order removing a fiduciary for failure to give a new bond or render an accounting required by the court, or an order appointing a special administrator. Section 28-1-116 (a) and (b). Section 28-1-116(g) also states that the law and rules applicable to appeals from equity courts apply equally to appeals from probate court, except as otherwise provided in the probate code. This court has stated that Rule 2 of the Arkansas Rules of Appellate Procedure preserved the statutory rights of appeal which were in existence at the effective date of the appellate rules, July 1, 1979. *Pickens* v. *Black*, 316 Ark. 499, 872 S.W.2d 405 (1994). These preserved rights of appeal include those granted under section 28-1-116, which was enacted in 1949. *Id.*

Our jurisdiction of this appeal is proper pursuant to section 28-1-116 and Ark. Sup. Ct. R. 1-2(a)(3), except for that part of the appeal taken from the order entered February 8, 1994 removing appellant as guardian of William's person for her failure to comply with its order to render an accounting and transfer the guardianship assets. Section 28-1-116(b). Therefore, we dismiss that part of the appeal taken from the probate court's order entered February 8, 1994 removing appellant as guardian of William's person. *See In the Matter of the Estate of McLaugh-*

*lin*, 306 Ark. 515, 815 S.W.2d 937 (1991) (per curiam) (dismissing appeal from order refusing to appoint a special administrator, for lack of an appealable order). We proceed to address appellant's other arguments for reversal.

This court reviews appeals from probate court *de novo* upon the record as abstracted. *Clardy* v. *Williams*, 319 Ark. 275, 890 S.W.2d 276 (1995). Absent clear error, we do not reverse the probate court's order. *In Re Estate of Spears*, 314 Ark. 54, 858 S.W.2d 93 (1993).

## FIRST POINT OF APPEAL

Appellant's first point of appeal is that the order removing her as guardian of William's estate entered December 29, 1993 is erroneous in both form and substance. Essentially appellant argues the court erred, first, because it never gave her the requisite opportunity to appear and show cause why she should not be removed, pursuant to Ark. Code Ann. § 28-48-105(a)(2) (1987 & Supp. 1993), and, second, because none of the grounds for removal of a guardian, as set forth in section 28-48-105(a)(1), were proved or are supported by the evidence.

Arkansas Code Annotated § 28-65-219(b) (1987) states that a guardian may be removed "on the same grounds and in the same manner as provided in § 28-48-105 for the removal of a personal representative." Section 28-48-105, in turn, provides in pertinent part:

> (a)(1) When the personal representative becomes mentally incompetent, disqualified, unsuitable, or incapable of discharging his trust, has mismanaged the estate, has failed to perform any duty imposed by law or by any lawful order of the court, or has ceased to be a resident of the state without filing the authorization of an agent to accept service as provided by § 28-48-101(b)(6), then the court may remove him.

> (2) The court on its own motion may, or on the petition of an interested person shall, order the personal representative to appear and show cause why he should not be removed.

In this case, the probate court clearly acted on its own motion,

and in the absence of a petition of any interested person, in removing appellant as guardian of William's estate. A plain reading of section 28-48-105 authorizes such action on the court's own motion, provided the removal order complies otherwise with the statute's requirements.

██ We find no clear error was committed in removing appellant as guardian of William's estate. We find that the section 28-48-105(a)(2) show cause requirement was substantially complied with. We find that the record supports appellant's removal on the statutory ground of "unsuitability" based on the court's finding of family friction, which adversely affected the guardianship estate's administration. Section 28-48-105(a)(1).

Our *de novo* examination of the record shows that the probate judge first addressed the issue of removing appellant as guardian of the estate in his letter, dated October 26, 1993, to all counsel of record. The probate judge there stated:

> Another suggestion that I would pass on for your consideration and that is that I believe that under the circumstances, it might be better for everyone concerned if a bank was appointed as Guardian of the Ward's Estate. They are better equipped to manage the same and pay the bills and this being a neutral Guardian, it would eliminate any family friction relative to the Ward's Estate. [Appellant] could continue to be Guardian of the Person, if she so desired, but I think the bank could function much better with regard to the objectives of the Guardianship, and that is to preserve, conserve, and protect the Ward's Estate for as long as it is possible.

In this letter, the probate judge also acknowledged receipt of a proposed order submitted by appellant for a petition which she had filed and which was then pending before the court for authority to sell stock and pay expenses of the ward; the probate judge directed the parties to review the pleadings. The probate judge concluded his letter by stating "the Court will set this matter for a short conference or hearing on its next Court day at Van Buren, so that the matters can be considered at that time." In her letter of reply to the probate judge and all counsel of record, dated November 2, 1993, appellant responded negatively and at length

to the judge's suggestion to remove her as guardian of William's estate.

Proceeding without an intervening conference or hearing, the probate court then filed an order on November 29, 1993 authorizing a partial sale of guardianship estate stock and payment of certain guardianship expenses by appellant. The order concluded "this cause is continued for further hearing to put this Guardianship case in proper perspective and to eliminate as much expense as possible herein, excepting for the care, maintenance and support of the Ward." The order then designated December 7, 1993 for a hearing. The probate judge mailed a copy of this order to all counsel of record by cover letter dated November 23, 1993.

On December 7, 1993, the hearing was conducted and attended by appellant, Alex and William, each accompanied by his or her counsel of record. At the beginning of the hearing, the probate judge stated that the purpose of the hearing was to address several matters, including the judge's opinion that a bank should be appointed as guardian of the estate. Appellant testified at length, principally regarding the guardianship estate's receipts and expenditures. She also testified that she was willing to continue serving as guardian. At the conclusion of the hearing, the probate judge stated in open court:

> The Court is going to appoint a bank as guardian of the estate of the ward, because that is in the best interest of the ward and everybody else concerned. The bank is neutral and they are well capable of handling these matters, and it will be a lot less expensive than what we have been undergoing in the past. It's in the ward's best interest to preserve, conserve and protect in that way, and also it will eliminate any possible friction from the family members because you folks need to get along with each other, speak with each other, communicate, be cordial and be kind, and not have trouble. And I think that this proceeding has not been helping you in that regard, so that's all the more reason to have a neutral take care of matters of that kind.

On December 29, 1993, the probate court filed an order dated December 7, 1993 which stated the probate judge's intention to remove appellant as guardian of the estate, in these words:

That in an effort to eliminate any possible future friction among the family members concerning this case, it is the Court's considered opinion that it is in the best interests of the ward and everyone concerned that a local bank be appointed guardian of the estate of the ward, and that a bank will be a neutral party well capable of handling the ward's financial interests. When such a bank has been appointed by the Court, the guardian shall file herein her final accounting.

Also on December 29, 1993, the probate court filed an order dated December 28, 1993 which removed appellant as guardian of William's estate and appointed her successor. With respect to the reason for the change of fiduciary, this order simply stated it was the court's considered opinion that it was in the ward's best interest and welfare to have a bank serve as guardian of the estate.

 Our probate code contains no definition of the term "unsuitable." However, in *Davis* v. *Adams*, 231 Ark. 197, 328 S.W.2d 851 (1959), we quoted, with interest, the definition of this term given by the Supreme Court of the State of Massachusetts, as follows:

> "The statutory word 'unsuitable' gives wide discretion to a probate judge. . . . Such a finding may also be based upon the existence of an interest in conflict with his duty, or a mental attitude toward his duty or toward some person interested in the estate that creates reasonable doubt whether the executor or administrator will act honorably, intelligently, efficiently, promptly, fairly, and dispassionately in his trust. It may also be based upon any other ground for believing that his continuance in office will be likely to render the execution of the will or the administration of the estate difficult, inefficient or unduly protracted. Actual dereliction in duty need not be shown."

*Id.* at 205, 328 S.W.2d at 574 (quoting *Quincy Trust Co.* v. *Taylor*, 317 Mass. 195, 57 N.E.2d 573 (1944)). In *Omohundro* v. *Erhart*, 228 Ark. 910, 311 S.W.2d 309 (1958), we affirmed a probate court's order removing and replacing sibling co-guardians upon several statutory grounds, including "unsuitability," where the evidence showed their continuous bickering and failure to

agree over the twelve-year period in which they served as their sister's co-guardians was beyond reconciliation.

We find the record in this case is replete with evidence of an adversarial sibling relationship which existed between appellant and Patricia *vis-a-vis* Alex, and the negative impact of that "family friction" upon the administration of William's guardianship estate. In particular, we note the following conflicts between the siblings during the few months of appellant's service as guardian of the estate: (1) Alex's differences with his sisters regarding William's continued residence at the farm versus a group residential treatment center, (2) Alex's objection to a partition sale of the nine-acre farm petitioned for by appellant as William's guardian, and (3) the joint motion for injunction filed by appellant and Patricia, and granted by the court, instructing Alex to refrain from harmful actions toward William. We also observe that the probate court, acting on its own motion prior to appellant's removal as guardian of William's estate, indefinitely continued the appointment of William's guardian *ad litem* in light of this family friction.

On these facts, we conclude the probate judge committed no clear error in removing appellant as guardian of William's estate and appointing a neutral successor.

## SECOND POINT OF APPEAL

Appellant's second point of appeal is that the probate court erred in refusing to partition the farm "from the outset of the case," and in refusing to allow the guardianship estate recovery of one-half of the attorney fees for partition from Alex, as the co-owner. Appellant fails to identify any order or ruling in the record which refuses to partition the farm, or refuses to allow the guardianship estate recovery of the described attorney fees. We find no notice of appeal filed from any such ruling. Hence this point of appeal is not properly before this court and will not be addressed.

## THIRD POINT OF APPEAL

Appellant's third point of appeal is that the probate court erred in denying her motion for stay pending appeal, motion to reconsider previous rulings, and denying her effort to show cause

why she should not be held in contempt of court for her alleged failure to comply with court orders. This point of appeal arises from the probate court's rulings which were rendered from the bench in open court on April 25, 1994, and filed of record by order entered on June 30, 1994. Appellant filed her notice of appeal from these rulings on April 28, 1994. Therefore the notice of appeal was filed prematurely. In consequence, any appeal from the June 30, 1994 order was not properly perfected for this court's review, and must be dismissed. *Kelly* v. *Kelly*, 310 Ark. 244, 835 S.W.2d 869 (1992).

In summary, we affirm the probate court's order entered on December 29, 1993 removing appellant as guardian of the ward's estate, and dismiss other arguments raised in this appeal without considering their merits.