Dionne McClain SNOWDEN and Michelle Shack,
On Behalf of Christian Shack, *A Minor v.*
Glinder RIGGINS, Administratrix of the
Estate of Joelaun Snowden, *Deceased*

CA 99-1032                                    13 S.W.3d 598

Court of Appeals of Arkansas
Division IV
Opinion delivered April 5, 2000

*Lundy & Davis, L.L.P.*, by: *Charles W. Peckham* and *Jackey W. South*, for appellants.

*Crumpler, O'Connor & Wynne*, by: *William J. Wynne*, for appellee.

JOHN B. ROBBINS, Chief Judge. This appeal comes from the probate court's refusal to set aside an order appointing appellee as administratrix of the estate of Joelaun Snowden, deceased. We hold that the order should have been set aside and, therefore, reverse and remand the case.

On May 11, 1996, Joelaun Snowden died in the crash of Valuejet Flight 592 in Dade County, Florida. He was survived by his mother, appellee Glinder Riggins, his father Grady Snowden, and two children, Jasmine Barnes and Marquela Ferguson. There is also the possibility that his survivors included a wife, appellant Dionne McClain, and another child, Christian Shack, whose mother is appellant Michelle Shack. After Joelaun's death, his mother and father, who had been divorced since 1980, filed competing petitions to be appointed personal representative of his estate. An objection to their petitions was filed by appellants, and the objection was joined in by Alicia Barnes and Markela Ferguson, the mothers of the deceased's two daughters. All four women were represented in the probate matter by attorney Floyd Thomas. Thomas had been retained as local counsel for these women by two out-of-state attorneys who were handling the McClain-Shack-Barnes-Ferguson wrongful-death claims resulting from the crash. In their pleading, appellants and their co-filers requested that they be appointed as administratrixes of the estate. They further alleged that the decedent was not a resident of Arkansas at the time of his death. A hearing on the matter was scheduled for December 13, 1996.

On December 6, 1996, one week before the hearing, attorney Thomas filed a motion to withdraw as appellants' counsel. He stated in his motion that a conflict had developed between appellants' claims and the Barnes-Ferguson claims. The court allowed the withdrawal, and an order was entered that same day.

At the December 13 hearing, Glinder Riggins and Grady Snowden appeared in person and were represented by counsel. Attorney Thomas appeared on behalf of Barnes and Ferguson. Appellants did not appear either in person or by counsel. Thomas explained to the judge that "Ms. McClain claimed to be the spouse of the deceased" and that "Michelle Shack claims to be the mother of a minor child, Christian Shack, who ... was a child of the deceased," but that there was no proof of such claims. He therefore withdrew as attorney for appellants to avoid a conflict with Barnes and Ferguson, the mothers of the decedent's two acknowledged children. He stated that appellant McClain, who lived in Tennessee, and appellant Shack, who lived in Michigan, were aware of the hearing and had been sent notice of his withdrawal by certified mail.

The judge allowed the hearing to proceed and told the parties that he would make no determination of heirship that day. Instead, his decision would be confined to the appointment of a personal representative. Testimony was taken, with most of it being directed to the question of whether the decedent's mother or father would be the more suitable administrator. During the course of the testimony, some evidence concerning the decedent's residence was adduced as a consequence. It appeared that the decedent was living and working in Nashville, Tennessee, at the time of his death. However, he had also rented a trailer in Union County from 1985 until his death and regularly spent time there (almost every weekend, according to his landlord). At the close of the evidence, the judge appointed appellee the administratrix of the estate, and her attorney was asked to prepare the order for the court's signature. The order, as entered on December 19, 1996, not only reflected appellee's appointment but recited that the decedent was a resident of Union County at the time of his death and that he was unmarried at the time of his death. Further, the order listed the decedent's survivors but did not include Dionne McClain or Christian Shack.

On December 30, 1998, two years after the above order was entered, appellants moved to set it aside. They asserted that the court did not have jurisdiction over the decedent's estate because the decedent was a resident of Tennessee at the time of his death, and they asserted that they had not received proper notice of attorney Thomas's withdrawal of his representation of them. Contemporaneously therewith, they asked that appellee be removed as administratrix because she had excluded them from a listing of heirs, had misrepresented the decedent's residence, and had shown animosity toward them. A hearing on these motions was held, and the judge refused to set the previous order aside. In an order entered August 3, 1999, he found that appellants had received notice of the 1996 hearing and of Thomas's withdrawal and that any questions regarding the decedent's residence were *res judicata*, having been decided at the prior hearing. Further, he affirmed his original appointment of appellee as personal representative. The order noted that no ruling was being made on appellants' claims of heirship and that such matters would be addressed if and when the court was called upon to distribute proceeds from the plane-crash litigation.

Appellants raise three issues on appeal: 1) whether the court's ruling that any questions concerning the decedent's residence are *res*

*judicata*; 2) whether the court should have removed appellee as administratrix; and 3) whether the court should have set aside the 1996 order because appellants did not receive proper notice of their attorney's withdrawal. We need not address the first two issues because we hold that reversal is merited on the third.

■■ We begin by addressing three threshold issues raised by appellee. The first is whether we have a final, appealable order in this case. Even though this appeal is brought from an interlocutory order, almost all probate court orders are appealable. Other than an order removing a fiduciary for failure to give a new bond or render an account or an order appointing a special administrator, a person aggrieved by an order of the probate court may obtain appellate review of the order. *See* Ark. Code Ann. § 28-1-116(a) and (b) (1987); *In re Guardianship of Vesa*, 319 Ark. 574, 892 S.W.2d 491 (1995). In particular, an order denying a petition to remove a personal representative is appealable. *Guess v. Going*, 62 Ark. App. 19, 966 S.W.2d 930 (1998). However, when an interlocutory appeal such as this one is taken, either this court or the probate court may stay the appeal until final distribution is made, unless the order admits or denies probate of a will or appoints or refuses to appoint a personal representative. Ark. Code Ann. § 28-1-116(c) (1987). Appellee contends that, by declining to determine appellants' heir-ship claims, the probate court impliedly stayed any appeal of its order until final distribution. We disagree. The court's order gives no indication of any intent to curtail appellants' right to appeal but only to clarify and restrict the scope of the order. Additionally, the order appealed from is largely concerned with the appointment of a personal representative and thus is not encompassed by subsection (c). Thus, we have an appealable order in this case.

■ The next threshold issue is whether the probate court had jurisdiction to consider appellants' request to set aside a two-year-old order, given the requirements of Ark. R. Civ. P. 60(b). That rule imposes a ninety-day time limit on a trial court's modification or setting aside of its orders (with certain exceptions contained in Rule 60(c)). However, a probate court may vacate or modify an order from which no appeal has been taken so long as the action is taken within the time period allowed for appeal after final termination of the administration of an estate. Ark. Code Ann. § 28-1-115(a) (1987). This statute has been interpreted to mean that a probate order may be vacated or modified at any time before a final

order is entered. *See Brooks v. Baker*, 242 Ark. 128, 412 S.W.2d 271 (1967). This rule applies notwithstanding the dictates of Rule 60(b). *White v. Toney*, 37 Ark. App. 36, 823 S.W.2d 921 (1992). Therefore, the court had the authority to set aside its 1996 order.

Finally, appellee contends that appellants were not entitled to seek her removal as personal representative because they were not "interested persons." A probate court may remove a personal representative for various reasons either on its own motion or upon the petition of interested persons. Ark. Code Ann. § 28-45-105(a)(2) (1987). An "interested person" is defined by the probate code as any heir, devisee, spouse, creditor, or any other having a property right, interest in, or claim against the estate being administered, and a fiduciary. Ark. Code Ann. § 28-1-102(a)(11) (1987). In *Pickens v. Black*, 316 Ark. 499, 872 S.W.2d 405 (1994), the decedent died testate, leaving nothing to his children. Later, his children attempted to remove the estate's executor. However, our supreme court held that the children were not interested persons because they were not heirs or creditors nor did they have a claim against the estate. *See also White v. Welsh*, 323 Ark. 479, 915 S.W.2d 274 (1996), in which it was held that the petitioners were not interested persons because they did not assert a claim against the estate or declare any interest in the decedent's property or indicate any entitlement to proceeds that might be distributed. By contrast, the appellants in this case are at least potential heirs. *See Sanders v. Ryles*, 318 Ark. 418, 885 S.W.2d 888 (1994), where, in an analogous context, the supreme court held that an interested party includes a potential heir to land that is part of an estate. Further, unlike the petitioners in *Pickens v. Black, supra*, appellants' decedent died intestate, meaning that, if their claims are proven, they could be legally classified as heirs. *See* Ark. Code Ann. § 28-1-102(a)(10) (1987), defining an heir as a person entitled to the property of an intestate decedent. Additionally, unlike the petitioners in *Pickens v. Black, supra*, and *White v. Welsh, supra*, appellants have asserted a claim against the decedent's estate, declared an interest in his property, and indicated an entitlement to proceeds of the estate. Based upon these factors, we hold that appellants were interested persons entitled to seek removal of the estate's personal representative.

Having disposed of the threshold issues, we turn to the merits of the case. Probate cases are reviewed *de novo* on appeal. *In re Guardianship of Vesa, supra*. However, we will not reverse the pro-

bate judge's findings of fact unless they are clearly erroneous. *See id.* A finding is clearly erroneous when, although there is evidence to support it, we are left on the entire evidence with the firm conviction that a mistake has been committed. *Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998).

We are firmly convinced that a mistake was made in this case when the probate judge found that appellants received adequate notice of their counsel's withdrawal from representation. A lawyer may not withdraw from representing any party without permission of the court. Ark. R. Civ. P. 64(b). Permission may be granted for good cause shown if counsel seeking permission shows, *inter alia*, that he has taken reasonable steps to avoid foreseeable prejudice to his client, including giving due notice to his client, allowing for the appointment of other counsel. *Id.* In this case, Thomas testified that, at the request of lead counsel, he withdrew from representation of appellants because of a potential conflict. That withdrawal was accomplished only seven calendar days before the 1996 hearing. According to Thomas, he mailed certified letters to appellants notifying them of his withdrawal. However, he never received any green cards back acknowledging the letters' receipt, and appellants testified that they never received notice. Nevertheless, even if appellants had received notice, they would have had only three business days at most to either arrange for their attendance at the hearing or to arrange for new local counsel to represent them. This was simply not the type of "due notice" contemplated by Rule 64(b). Further, the prejudice that they suffered as a result of their lack of representation is apparent. Thomas was able to state, on the record and without contradiction, that neither appellant could prove her heirship claim. Additionally, the 1996 order that resulted from the hearing contains certain extraneous matters which, while they were not crucial to the court's appointment of a personal representative, stated matters or omitted matters contrary to appellants' interests.

The probate judge ruled that appellants knew or should have known of Thomas's withdrawal as their primary counsel and that "if someone wants to blame someone" the blame could be placed upon the primary attorneys. Our supreme court has addressed the unfortunate practice of viewing the propriety of counsel's withdrawal from the standpoint of whether counsel engaged in wrongdoing rather than from the standpoint of how the

client was affected. In *Jones-Blair Co. v. Hammett*, 326 Ark. 74, 930 S.W.2d 335 (1996), it was emphasized that Rule 64(b) is aimed at protecting the client. The trial court should focus on whether the client's interest is protected and should play an active role in determining whether the requirements of Rule 64(b) have been met. That was not done in this case. Thomas's notice of withdrawal, when viewed from the client's perspective, violated Rule 64(b). He did not allow appellants sufficient time to protect their interests in the hearing by either appearing themselves or by hiring new counsel. We therefore hold that the 1996 order should have been set aside.

Based upon the foregoing, the 1996 order is set aside in its entirety, the 1999 order appealed from is reversed in its entirety, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BIRD and CRABTREE, JJ., agree.