CRIDER *v.* SIMMONS.

4-4288

Opinion delivered July 6, 1936.

*Ross Mathis* and *Verne McMillen*, for appellants.

*Jonas F. Dyson*, for appellees.

BUTLER, J. J. W. Simmons, as administrator of the estate of E. W. Crider, deceased, presented his petition to the probate court of Woodruff county alleging that the personal property of his intestate was insufficient to pay the debts which had been proved against the

estate, and praying for an order directing the sale of lot 13, block 28, Lynch's Addition to the town of Cotton Plant, Arkansas, to pay said debts. On October 24, 1932, the court made and entered the following order: "On this date is presented to the court a petition of the administrator asking for an order to sell lot 13 in block 28 of Lynch Addition to the town of Cotton Plant, Arkansas, to pay debts and expenses of the administration. The court being well advised in the premises as to the law and facts doth find for said petitioner: It is, therefore, by the court considered, ordered, and adjudged that it would be to the best interest of the creditors of said estate for said property to be sold, and the proceeds of said sale applied to said debts, and as there is no personal property or a sufficient amount to pay the allowed claims, said administrator is hereby directed to sell said property after having complied with the laws of this State in matters of sales of this character, and report his action to this court for its approval."

Subsequent to the date of this order, at the instance of the administrator, an appraisal was made of the said lot in the sum of $400. It appears that the sale was made and reported to the court, the report showing that at the sale Mrs. Lidie Simmons, the wife of the administrator, J. W. Simmons, had purchased said lot for the price of $270. It is uncertain on what day the sale was made or when the report thereof was filed with the probate court, but the court made an order on December 12, 1933, reciting the filing of the report, and, finding no objections had been filed thereto, confirmed the report and directed the administrator to make and deliver his deed as administrator to Mrs. Lidie Simmons and, of the amount of $270 bid, after collecting the same, to pay to Mrs. E. W. Crider, $90 as her dower interest therein. He was ordered also to pay $50 to an attorney for services in the matter of making the sale. On the same day Mrs. E. W. Crider executed to Mrs. Lidie Simmons a quitclaim deed conveying to Mrs. Simmons her dower interest in the lot sold, and on December 17, 1933, the administrator, J. W. Simmons, executed to Mrs. Lidie Simmons his deed as administrator to the said property.

Subsequent to the purchase by Mrs. Lidie Simmons, she insured the dwelling house situated on the lot with the Royal Exchange Assurance of London in the sum of $1,000. This policy was issued on April 7, 1934, after which the dwelling was totally destroyed by fire at a time when the policy was in full force and effect. On November 6, 1934, the appellants, who were the heirs of E. W. Crider, deceased, instituted an action in the chancery court of Woodruff county in which they sought to have set aside the sale and deed to Mrs. Lidie Simmons on the ground of fraud. They prayed that the title to the property be vested in fee simple in the appellants, and that the amount of $1,000 under the insurance policy be adjudged and decreed to them. J. W. Simmons and Mrs. E. W. Crider (styled in the complaint as Mrs. Mae M. Crider) were made party defendants. Mr. and Mrs. Simmons answered denying the allegations of fraud, alleging that the sale was regular, and that the contract of insurance was entered into at a time when Mrs. Simmons was in the legal possession of the property, and that she was entitled to the proceeds of said policy for which she prayed judgment against the insurance company. The insurance company answered, setting out a provision of the policy as follows: "This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the assured in fee simple."

It alleged that Mrs. Lidie Simmons was not the sole and unconditional owner of the property insured at the date of the policy; that, therefore, she was not entitled to recover under the provisions of the policy, and that same should be canceled and declared void.

Evidence was adduced on the issues joined, and a decree was rendered sustaining the sale to Mrs. Simmons, and the title conveyed by reason thereof to her by the administrator. The complaint was dismissed for want of equity, and judgment was rendered against the insurance company for the face of the policy. From

that judgment the heirs of E. W. Crider and the insurance company have appealed. Appellee, Mrs. Lidie Simmons, has cross-appealed on the ground that since the insurance company has denied liability it became liable to appellee for twelve per cent. penalty and a reasonable attorney's fee to be ascertained by the trial court on remand.

As this is a collateral attack on the proceedings in the probate court, the appellees rely upon § 181 of Crawford & Moses' Digest, which provides that the finding and recitals of a decree of the probate court authorizing a sale by an administrator, and ordering the same, that the administrator was duly and legally appointed, etc., and that the facts set forth in the petition which entitled the administrator to make the sale, shall be conclusive on all parties claiming an interest in said sale save upon direct appeal to the circuit court, and that the finding and judgment of the probate court shall not be open to collateral attack save for fraud or duress.

The order set out contains none of the recitals of the requirements prescribed by statute as preliminary requisites for the sale of the real estate of a decedent for the payment of his debts, §§ 153, 156, 157, 158, 161, Crawford & Moses' Digest, and, therefore, no presumption arises as to the regularity of the sale. By its express terms, the statute provides for collateral attack on a judgment for fraud or duress. In *Watson* v. *Lester*, 182 Ark. 386, 31 S. W. (2d) 955, in holding that a judgment of the probate court was open to collateral attack, § 181 of Crawford & Moses' Digest was considered, and it was held that "as fraud vitiates everything," and that such was proved, the judgment of the probate court should be set aside, and the deed based thereon was ordered canceled.

The lot involved had a dwelling on it, and E. W. Crider, in his lifetime, had purchased the property for the sum of $400, but we are of the opinion that a preponderance of the evidence establishes its value at not less than $1,000, and, at the time of its purchase by Crider, it was insured for $1,500. At the time of the sale under the probate court proceeding, the dwelling

situated on the lot was insured for $500, and afterward Mrs. Lidie Simmons procured insurance on the same in the sum of $1,000. While it was not in a desirable residential district, it seems clear that the intrinsic value was at least in that amount. It was a six room cottage, built of finished lumber with brick pillars and canvassed and papered on the inside. Mr. Biatt, who sold the house to Mr. Crider for $400, explained that he sold the property because he was living in Arizona, and had lived there about two years at the time of the sale; that he had to leave Cotton Plant on account of his health, and that he did not think he received the full value of the property. Two of the appraisers testified in the case. One stated that he thought the property should be worth about $1,000. He testified as to some argument between the appraisers and Judge J. W. Simmons, the administrator, as to the value, as follows: ''I don't remember just how it was now, but it was my idea to fix the value of $1,000, and he insisted on the appraisers holding the value down.'' The other appraiser who testified spoke also of a controversy as to the value of the property, and stated that a house of the kind on the property would run $1,500, and that the value should have been at least between eight hundred and a thousand dollars as it stood; that the appraisement was fixed in order for the administrator to sell at an offer which witness understood he had, and that witness was influenced by this in fixing the value at $400.

Mrs. Simmons testified that she paid the purchase price with her money. J. W. Simmons testified that he kept this as his fee, except $90 paid for the widow's dower interest and $50 to the attorney. The net result was that the estate got nothing. The record also fails to show that any claims for debts due the estate were filed in the office of the clerk of the probate court or proved and allowed by the court, although the testimony of the administrator is to the effect that there had been over two thousand dollars worth of claims filed with him. Who these claimants are, and the nature and amount of their several claims remains solely within the knowledge of the administrator. Where and when the sale was had

is not disclosed by the evidence. All we know is that there was only one bidder who appeared by an attorney.

Other circumstances tending to establish the grounds for the cancellation of sale are an entire lack of compliance with the provisions of our statutes relating to sales by administrators of real estate for payment of debts due by the estate. While these, in themselves, are not sufficient to warrant the cancellation of the sale on collateral attack, they tend to support the allegations of fraud in the appellants' complaint, and, in connection with the other circumstances stated, are sufficient to establish a legal fraud—while perhaps not an actual one—which, in our opinion, warrants the setting aside of the judgment of the probate court, and the sale resting thereon.

We recognize, as a fundamental principle, that the finding of a chancellor will be sustained unless it is against the preponderance of the evidence, and that in cases where fraud is alleged as a foundation for a cause of action, the fraud must be clearly proved to entitle the party asserting it to the relief prayed. In controversies between administrators and those standing in near relation to him, and the heirs and distributees and creditors of the estate, circumstances are sufficient to establish such misconduct on his part as amounts to a legal fraud, which, in ordinary cases, would not be sufficient. He represents the heirs and creditors and it becomes his duty to act with the utmost good faith, and he can, neither directly nor indirectly, profit at their expense. This duty is based on sound public policy which treats him as a trustee, and the heirs and others interested in the distribution of the estate as beneficiaries of the trust. This rule forbids the purchase by the administrator of real estate sold to pay debts, and this is true although the purchase may not be made directly by him; but, if he is interested therein, the legal prohibition applies. *Gibson* v. *Herriott,* 55 Ark. 85, 17 S. W. 589. Because of the relationship existing between an attorney and client, the attorney of an administrator who files a petition and obtains an order for the sale of property is not allowed to purchase at the sale. *West* v. *Waddill,* 33 Ark. 575.

The law demands so strict an adherence to the administrator's duty that no temptation to weigh self-interest against integrity can be placed in the trustee's way. Therefore, a sale by an administrator of his intestate's land to his wife for an inadequate price, where he benefits in any way, is equivalent to having sold it to himself. *Woodward and Wife* v. *Jaggars*, 48 Ark. 248, 2 S. W. 851. "The fact that he may seek to evade the law, rather than openly violate it by causing another to appear as the purchaser, can avail him nothing. * * * Where he has a duty to perform as vendor, and takes an interest by the purchase, the inquiry is not whether there was or was not fraud in fact; the law stamps the act as fraudulent *per se,* and the purchase will be set aside at the instance of the *cestui que trust.*" *McGaughey* v. *Brown,* 46 Ark. 25.

In the instant case the sale was made for an inadequate price to the attorney who had prepared the petition for sale of the property. The purchase was made by him for the wife of the administrator, one-third of the proceeds paid to the widow, $50 paid to the attorney, and the remainder retained by the administrator for his personal use. Because of this, and the other circumstances relating to the sale above stated, the judgment of the probate court should be set aside, and the administrator's deed based thereon cancelled. This result must follow, although it does not appear that any actual fraud was contemplated by the administrator. Certainly, none appears with which the attorney can be charged, and any such imputation is strongly disavowed by counsel for appellants.

There remains to be considered, first, the contention of the insurer that the policy was void, and should be canceled, and second, if this contention be erroneous, the relationship of Mrs. Lidie Simmons with respect to the policy, and the heirs and persons interested in the estate.

1. The clause of the policy with reference to sole and unconditional ownership is inserted to protect the insurer against taking risk on property for an amount disproportionate to the value of the interest of the insured. *National Liberty Ins. Co.* v. *Spharler,* 172 Ark.

715, 290 S. W. 594. Or, as stated in Couch Cyc. of Ins. Law, vol. 4, page 3179, "This rule of validity is based upon the theory that the purpose of such provisions is to prevent over-insurance and resulting fire loss, due to intentional fraud or to the negligent failure of the insured to use reasonable precautions to avoid loss." To constitute the insured an absolute owner, it is not necessary that his title be wholly indefeasible and good against the world. For this reason, conveyances which are good between the parties, but which may nevertheless be set aside as in fraud of others, may be regarded as constituting the grantee the absolute owner within the meaning of a provision of a policy similar to that alleged as a defense by the insured in the case at bar. Cooley's Briefs on Insurance (2d ed.) vol. 3, page 2148.

In the case of *Atlas Fire Ins. Co.* v. *Malone,* 99 Ark. 428; 138 S. W. 962, it was held that the insured was the real and substantial owner of the property within the meaning of the terms of the policy where he was in its undisputed possession, and claiming to be the sole owner under a deed conveying unconditionally the whole estate to him, and, as such, was entitled to recover under a policy of insurance providing that it should be void if the interest of the insured was other than unconditional and sole ownership, both legal and equitable. This seems to be the general rule. *Phoenix Ins. Co.* v. *Mitchell,* 67 Ill. 43; *Phoenix Ins. Co.* v. *Bowdre,* 67 Miss. 620, 7 So. 596, 19 Am. St. Rep. 326, (quoting headnote): "Condition avoiding policy if interest of the insured be other than an absolute fee-simple means only that he shall not have a limited interest, but shall claim and hold under a conveyance purporting to invest him with an estate in fee, * * *." See, also, *Travis* v. *Continental Ins. Co.,* 47 Mo. App. 482.

2. Inasmuch as the sale to Mrs. Lidie Simmons must be set aside, whatever benefit she might derive by reason of her occupancy under the administrator's deed must be deemed to be held by her as trustee for the heirs and creditors of the estate. *McGaughey* v. *Brown,* *supra.* Therefore, the proceeds of the insurance policy due the estate should be paid to the administrator to be

distributed by him in accordance with the law. The interest, if any, in the policy arising by her ownership of the dower interest and her right to be reimbursed for the money actually paid by her to the administrator for the purchase of the property are matters properly for the consideration and decision of the court on remand.

On cross-appeal, Mrs. Lidie Simmons contends that the insurer should be charged with a twelve per cent. penalty and attorney's fee. This question seems to have been waived by consent of all parties because of the doubt existing as to the validity of the insurance contract, and as to who was entitled to its proceeds. The administrator, as the representative of the appellants, and the creditors of the estate, would be the only interested party, and as this question appears to have been waived by him and the other litigants, the relief prayed on cross-appeal will be denied.

The decree of the trial court is reversed, and the cause remanded for further proceedings according to law, and not inconsistent with this opinion.

McHANEY and BAKER, JJ., dissent.