Carl E. WARREN, Individually and as Executor of the Estate of E. Lucille Johnson, Deceased *v.* Sherry Grant TUMINELLO, et al.

CA 94-300                                        898 S.W.2d 60

Court of Appeals of Arkansas
Division I
Opinion delivered May 17, 1995

*Friday, Eldredge & Clark*, by: *William S. Sutton, Byron M. Eiseman, Jr., William A. Waddell, Jr.*, and *J. Lee Brown*, for appellant.

*Malcolm R. Smith, P.A.*, for appellee.

MELVIN MAYFIELD, Judge. Appellant Carl E. Warren, individually and as executor of the estate of E. Lucille Johnson, appeals from the order of the probate court which reduced the fees requested by him as executor and accountant.

Mrs. Johnson died testate on February 21, 1991. The will left 63 percent of her estate to the United Methodist Foundation of Arkansas, 31 percent to the appellees, and the remainder to several other beneficiaries. Appellant, a CPA who had performed accounting services since 1951 for the decedent and her husband (until his death in 1989), was appointed as executor of her estate and subsequently hired Carl E. Warren & Associates, P.A. (Warren & Associates), to perform accounting services for the estate.

On December 23, 1991, the probate court approved appellant's petition to pay himself $70,592.50 as executor.

On March 31, 1992, appellant filed the first accounting as executor of the estate. The accounting showed payments to appellant as executor in the amount of $70,592.50 and to Warren &

Associates for accounting services in the amount of $70,710.43. On May 27, 1992, the appellees filed an objection to the accounting alleging, among other things, that appellant may be in violation of Ark. Code Ann. § 28-52-101(c)(5) (breach of duty regarding self dealing) with respect to fees paid to the accounting firm of Warren & Associates.

On March 23, 1993, appellant filed the second accounting as executor of the estate. This accounting showed additional payments in the amount of $13,376.91 to Warren & Associates, and on April 9, 1993, appellees filed amended objections to the accounting alleging that appellant had breached his fiduciary duties to the estate by acting as executor and accountant at the same.

On June 28, 1993, appellant filed a petition for approval of final accounting; for allowance and payment of final fees to the personal representative, accountant, and attorneys; and for authority to make final distribution of estate assets. Appellant requested an additional $28,220.00 fee as personal representative, making a total of 1162.50 hours of work at $85.00 per hour, and an additional $20,465.72 for the accounting firm of Warren & Associates. On the same day, the appellees filed an objection to this accounting and petition for fees.

A hearing was held July 13, 1993, on the reasonableness of the fees claimed, and on November 5, 1993, the probate court entered an order finding, among other things, that appellant had a serious conflict of interest in serving as executor and accountant for the estate and that appellant's charges as executor and accountant were excessive and unconscionable. The court held, among other things, that: (1) appellant was entitled to an executor's fee in the amount of $35,000 and should repay the estate $35,592.50 of the amount already received; (2) appellant should repay to the estate $42,776.74 paid him for hours included in three accounting bills paid December 27, 1991, plus 10 percent of the balance of those bills after deducting appellant's hours; and (3) appellant should repay $13,376.91 in accounting fees paid February 17, 1992. The court also denied the additional accounting and executor's fees requested and held appellant personally liable to the estate for the sums to be returned.

On appeal, the appellant first argues that the probate court erred in finding he had a conflict of interest. Appellant contends

he performed his tasks as accountant and executor in an admirable and thorough manner and that appellees' only complaint is that he charged too much. He says nothing prohibits a person from acting as both personal representative and accountant for an estate and that there was no evidence of self-dealing or of an actual conflict of interest.

■    An executor of an estate occupies a fiduciary position and must exercise the utmost good faith in all transactions affecting the estate and may not advance his own personal interest at the expense of the heirs. 31 Am. Jur. 2d *Executors and Administrators* § 527 (1989). However, we think the appellant is correct in arguing that an executor is not prohibited from acting as an accountant for the estate.

■    We have not been cited to any statute or case authority which prohibits one from serving both as a personal representative and accountant for an estate. The appellant cites us to the testimony of an accountant who testified as an expert for the appellees and who said he had contacted the Arkansas State Board of Public Accountancy and posed a hypothetical question to the Board which opined that the dual service was not unethical. Appellant also cites us to *In re Estate of William R. Tuttle*, 173 N.Y.S.2d 279, 149 N.E.2d 715 (1958); *In re Wexler's Estate*, 9 Misc.2d 735, 171 N.Y.S.2d 1016 (1951); *In re Estate of Jadwin*, 58 Misc.2d 809, 296 N.Y.S.2d 901 (1969); *Spector Industries, Inc.* v. *Mitchell*, 63 N.C. App. 391, 305 S.E.2d 738 (1983); and Annot., *Right of Executor or Administrator to Extra Compensation for Accounting Services Rendered by Him*, 65 A.L.R.2d 838 (1959). These authorities support the proposition that dual service as personal representative and accountant does not *per se* create a conflict of interest. Moreover, there is evidence that appellant in the instant case performed his tasks as executor and accountant thoroughly, and there is no contention that he accounted for or disposed of the assets of the estate in an improper manner.

Therefore, we think that the only issue in this case concerns the reasonableness of appellant's fees and whether the trial court erred in not awarding him a fee as accountant, in denying him 10 percent of the balance of the accounting bills after deducting appellant's hours included therein, and in reducing the fees awarded him as executor of the estate.

Our problem is that the trial judge, after finding that appellant "has a serious conflict of interest" in serving as executor and accountant in this estate, also found appellant's charges "both as executor and accountant, are clearly excessive and unconscionable under any standards." Moreover, the judge allowed appellant a total fee of $35,000 for his services as executor but did not allow him a fee in any amount for hours the appellant spent working as an accountant, and did not allow appellant to retain the 10 percent portion of the fees allowed the accounting firm of Warren & Associates — which appellant contends he was due under an agreement with that firm made when appellant sold his interest in the firm. Probate cases are tried *de novo* on appeal, and this Court does not reverse the findings of the probate judge unless they are clearly erroneous, giving due deference to his superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Gilbert* v. *Gilbert*, 47 Ark. App. 37, 43, 883 S.W.2d 859, 862 (1994). The value of services rendered to an estate is primarily a factual determination to be made by the probate judge, and the appellate court will not reverse his decision where it is not clearly erroneous. *Adams* v. *West*, 293 Ark. 192, 195, 736 S.W.2d 4, 6 (1987). Further, a fee award for services rendered to an estate is primarily a matter within the discretion of the probate judge, and this Court will not reverse such an award without finding an abuse of discretion. *Morris* v. *Cullipher*, 306 Ark. 646, 652, 816 S.W.2d 878, 882 (1991).

Thus, we cannot be sure what the trial judge allowed or disallowed as a result of the interplay of the factors of conflict of interest, excessiveness, and unconscionability. Our review of probate cases is *de novo*, just as it is in chancery cases. *In re Estate of Jones*, 317 Ark. 606, 607, 879 S.W.2d 433, 434 (1994). But the rule is well established that while we have the power to decide chancery cases *de novo* on the record before us, in appropriate cases we also have the authority to remand such cases for further action. *Black* v. *Black*, 306 Ark. 209, 215, 812 S.W.2d 480, 483 (1991); *Jones* v. *Jones*, 43 Ark. App. 7, 18, 858 S.W.2d 130, 137 (1993). *See also Ferguson* v. *Green*, 266 Ark. 556, 587 S.W.2d 18 (1979), and *Moore* v. *City of Blytheville*, 1 Ark. App. 35, 612 S.W.2d 327 (1981). Here, we think it best to remand. We have given the matter careful consideration, but the evidence

presented concerns many bookkeeping details, the application of discretion under the evidence and the law, and perhaps the ability to hear additional evidence. In sum, we think it is best to remand for the trial judge to reconsider his decision in keeping with this opinion.

Reversed and remanded.

ROBBINS and ROGERS, JJ., agree.