Gerald SCHENEBECK, Executor of Estate of J. Eric Schenebeck, Deceased *v.* Dorothy F. SCHENEBECK

96-1438                                947 S.W.2d 367

Supreme Court of Arkansas
Opinion delivered June 23, 1997
[Petition for rehearing denied September 11, 1997.]

*Pike & Bliss*, by: *George E. Pike, Jr.*, and *Deborah Pike Bliss*, for appellant.

*Wright, Lindsey & Jennings*, by: *Isaac A. Scott, Jr., Nancy Bellhouse May*, and *J. Betsy Meacham*, for appellee.

ROBERT L. BROWN, Justice. This appeal involves the interpretation of a will and a testamentary trust. James Eric Schenebeck died on October 4, 1993, at age 70. His last will and testament was dated April 4, 1991, and in his will he named his son, appellant Gerald Schenebeck, executor of the estate. After Schenebeck's death, Gerald petitioned to open his probate estate. The petition showed the testator's surviving spouse to be appellee Dorothy Schenebeck. It further showed the estimated value of

real property to exceed $1,000,000 and personal property to exceed $100,000.

Under the will, Gerald was left specific bequests of household goods and furniture, with Dorothy receiving the remaining furnishings in the home. The will also provided that Dorothy could live in the house for one year, although the testator added that it was his request, but not his direction, that she live there longer, if she maintained the property. The will further contained a legacy of $20,000 to Dorothy. Two other children were left legacies of $5,000 each. Gerald was to receive the remainder of the estate.

The will, in addition, created a testamentary trust. The testator ordered his executor to transfer approximately 400 acres of land located on two plots to the trust. The land was used for a fish farm. The two beneficiaries of the trust were Gerald and Dorothy. Gerald was named trustee of the trust. The testator directed that the trustee distribute $36,000 per year to Dorothy from the income of the trust so long as she lived, with the remaining income from the trust going to Gerald. The trust was to terminate at Dorothy's death, with Gerald receiving the corpus of the trust.

Probate of the estate ensued, and it consisted of a series of squabbles between Gerald and Dorothy. The disputes involved allegations of Dorothy's auctioning furnishings at the house, Gerald's failure to file an adequate accounting for the estate, debts and rental owed the estate by Dorothy, Dorothy's failure to maintain the property, and, of primary importance, the failure of Gerald to pay the $20,000 legacy and the $36,000 annual income from the testamentary trust. Litigation also developed around a 1972 premarital agreement between James Eric Schenebeck and Dorothy, where he agreed to leave a life estate in his property to Dorothy. Dorothy sought to enforce the premarital agreement in chancery court, but her claim was denied.

During the probate of the estate, it came to light that on April 1, 1987, James Eric Schenebeck entered into a 15-year lease of farmland with Gerald where Gerald was to pay $75 an acre as annual rent with incremental increases of five percent every five years. Dorothy signed this lease on April 15, 1991.

On July 3, 1995, matters came to a head with Dorothy's motion entitled Motion For Proof of Respondent's Fulfillment of Duties as Trustee and Requirement of Remittance of Income Owed to Petitioner. In the motion, Dorothy asked for payment of the $20,000 legacy, her $36,000 annual income under the testamentary trust, proof that the testamentary trust had been funded, and an accounting of income from the 400 acres, including income from Gerald's subleases of the leased farmland.

The probate court ordered that Gerald file an inventory for the estate and that estate taxes be paid. Gerald filed the updated accounting and inventory of assets and liabilities as well as the federal estate tax return. In connection with the federal estate tax return and in order to qualify Dorothy's life interest in the testamentary trust as a Qualified Terminable Interest Trust, Gerald disclaimed all interest in the property and income from the testamentary trust for the balance of Dorothy's life. Because of Gerald's disclaimer, Dorothy claimed as hers all of the income from the farmland which formed the *res* of the testamentary trust, including income from the subleases.

In a motion filed with the probate court, Gerald conceded that he made annual lease payments to the estate for the leased farmland, which totaled $63,000 for 1994 and 1995. Of that lease payment he used $37,434.70 to repair the irrigation system and pay other expenses, leaving Dorothy the balance of $25,565.30. Dorothy complained that these expenses should be borne by Gerald as lessee of the farmland under the lease agreement and not by the testamentary trust.

At a hearing held on May 8, 1996, Gerald admitted that Dorothy had not been paid the $20,000 bequest and testified that the testamentary trust had not been funded because the 400 acres of farmland had not been deeded to the trust. He also admitted that he disclaimed his right to trust income so that the estate would get the marital deduction for estate tax purposes. He further agreed that there was no separate accounting for the testamentary trust, since the trust did not yet exist.

The probate court filed a detailed letter opinion followed by an order. The salient points of the order for purposes of this appeal follow:

- Gerald had a conflict of interest in serving as executor, lessee, sublessor, trustee, and remainderman of the trust and should be removed as trustee. It was suggested by the court that a financial institution replace him as trustee.

- Certain repairs to the irrigation pipes and pump were not a proper expense to be charged to the testamentary trust but were the responsibility of Gerald as lessee of the farmland.

- Dorothy was entitled to the full income of the testamentary trust or else the estate would lose the benefit of the marital deduction trust.

- Gerald was directed to pay the $20,000 legacy with eight percent interest from the date that Dorothy's right to take against the will expired.

- The filed accountings are insufficient with respect to the farmland, and an accountant should be appointed to file a new accounting.

## I. Probate Court Jurisdiction

Gerald first contends that the probate court lacked jurisdiction to enter the orders that affect the administration of the testamentary trust. Dorothy responds that the probate court merely undertook the administration of the probate estate, including marshalling assets of the estate, and did not improperly exercise control over the trust because the trust, though created by the will, had yet to be funded.

The Arkansas Constitution provides that probate courts have "exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, and persons of unsound mind." Ark. Const. art. 7, § 34. Although probate courts clearly have jurisdiction over the probate of a will, the construction, interpretation, and operation of trusts are matters that lie within the jurisdiction of

chancery courts. *Thomas v. Arkansas Dep't of Human Servs.*, 319 Ark. 782, 894 S.W.2d 584 (1995); *Anna Flippin Long Trust v. Holk*, 315 Ark. 112, 864 S.W.2d 869 (1993). The probate court also has authority to order distribution of assets of the probate estate to a trust. *See* Ark. Code Ann. § 28-1-104 (1987). However, a probate court has no jurisdiction to administer a trust created by a will. *Clement v. Larkey*, 314 Ark. 488-A, 863 S.W.2d 578 (1993); *Alexander v. Alexander*, 262 Ark. 612, 561 S.W.2d 59 (1978). Chancery courts, on the other hand, have no jurisdiction to probate a will or distribute an estate. *Gaylor v. Gaylor*, 224 Ark. 644, 275 S.W.2d 644 (1955). In sum, the probate court has no authority to make certain that the parties comply with the terms of a testamentary trust beyond the normal process of probating the will and overseeing the distribution of assets. In *Alexander v. Alexander, supra*, for example, this court held that the probate court lacked jurisdiction to order that all future sales and dispositions of the trust property must have the assent of all the beneficiaries — "if it was an attempt [by the probate court] to administer the trust."

█ Bearing these principles in mind, we turn to Gerald's specific claims that the probate court lacked jurisdiction or, alternatively, erred in ruling as it did with respect to certain aspects of its order. We review probate cases *de novo* on appeal, and the probate court will not be reversed unless the court's findings are clearly erroneous. *Wells v. Estate of Wells*, 325 Ark. 16, 922 S.W.2d 715 (1996). Due deference is given to the trial judge's position to ascertain the credibility of the witnesses. *Id.*

*Prorated rental payment.*

Gerald first argues that the trial court erred in making him pay an extra $15,435 for prorated rent due the estate under his lease for the farmland in 1993. He contends that he had already made his lease payment for the entire year, that is, from April 1, 1993 to March 31, 1994, and that he owed nothing more to the estate after James Eric Schenebeck's death on October 4, 1993. Dorothy answers that the record does not support Gerald's claim of payment, and, thus, there is no proof that he made it. Without proof, the probate court correctly ruled as it did, according to Dorothy.

■ The testamentary trust was created but not funded, and the probate court was simply collecting the assets of the estate and distributing them to the proper entity when it ordered the prorated rental payment to be paid into a special account established for the benefit of trust beneficiaries. *See* Ark. Code Ann. § 28-1-104 (1987). We do not perceive this action as constituting administration of the testamentary trust. Hence, jurisdiction over the rent payment owed to the estate lay in probate court, and the probate court had the authority to enforce collection of it. Without proof that a prorated payment was a duplication of rent already paid, the probate court was correct in its ruling.

*Increase in rental payments.*

Gerald next argues that the trial court lacked jurisdiction to order an increase in Gerald's rent payments. He essentially maintains that the testamentary trust is clear that he was to receive all income from the farmland in excess of his annual lease payment to the estate under the rental agreement. He contends that his disclaimer of income in the testamentary trust did not affect the lease arrangement and that the income from the trust property would include nothing more than the landlord's interest in the trust property and not the tenant's. Dorothy responds that Gerald's disclaimer prevents him from accepting any portion of the income generated from the lease and subleases of the trust farmland.

■ The essence of this issue concerns payment of income from the testamentary trust to competing beneficiaries and the effect of Gerald's disclaimer on the income distribution. We have no hesitancy in concluding that this action fell into the category of trust administration, which lies wholly within the jurisdiction of the chancery court. *Clement v. Larkey, supra.* We hold that the probate court lacked jurisdiction to decide distribution of trust income as between Gerald and Dorothy.

*Payment of irrigation costs.*

Gerald contends that he had the authority as trustee to incur the expenses for farm maintenance without the need to seek probate court approval, when the action was in the best interest of the

estate. He states that the extra expenses associated with dividing larger fish ponds on the farmland into smaller ones was commensurate with what had happened prior to his father's death. Dorothy responds that Gerald, as lessee, was responsible for repair expenses under the terms of the lease agreement.

The lease agreement provided: "It shall be the responsibility of the Lessee [Gerald] to maintain all constructed and reconstructed fish ponds and farm levees, as well as the constructed and reconstructed stand pipes and well pumps in as good a condition as furnished to Lessee . . . ." The probate court ruled that it was a breach of fiduciary duty for Gerald as trustee to credit these irrigation repair costs against trust income rather than as costs that should be borne by Gerald as lessee. The probate court did find that one expense for a well was properly assigned to the trust under the terms of the lease.

Again, the testamentary trust had yet to be funded at the time of the probate court's ruling. Nonetheless, the probate court was without jurisdiction to determine proper costs attributable to the trust and whether Gerald had breached his fiduciary duty as trustee of that trust. Had the probate court decided this point based on Gerald's role as executor of the estate, it probably would have passed muster. But the court did not and manifestly intruded upon the domain of chancery court when it determined what was an appropriate trust expense and whether the trustee had breached his fiduciary role. We reverse the probate court on this point as well for lack of jurisdiction.

*Removal of trustee.*

Gerald claims for his final jurisdictional point that the probate court erred in removing him as trustee because he had not breached his fiduciary duty. Our holding here is a corollary to the last point raised. The probate court had no jurisdiction to remove a trustee of a testamentary trust from his duties, even though the trust, at that juncture, had yet to be funded. This is a matter that rests solely within the judgment and discretion of chancery court. Again, had the probate court limited its ruling to the removal of the executor, there most likely would have been no infringement

on the chancery's jurisdiction. *See* Ark. Code Ann. § 28-48-105 (1987) (allowing for removal of personal representative when estate is mismanaged or where a duty remains unperformed). We reverse the probate court on this point.

## II. $20,000 Legacy

For his last point, Gerald claims that the estate should not be saddled with an eight percent interest payment, or, alternatively, should be assessed less of an interest payment than what was ordered by the probate court. The crux of Gerald's argument is that the estate asserted various offsetting claims against Dorothy and the legacy, and, as a result, there could be no accrual of interest because the amount owed for the legacy was uncertain.

■ Under the Arkansas Probate Code, general legacies bear interest at the rate of six percent or the then prevailing legal rate, beginning 15 months after commencement of probate administration. Ark. Code Ann. § 28-53-112(a) (1987). Specific devises of property, however, only include income or increments accruing to the property while in the hands of the personal representative. Ark. Code Ann. § 28-53-112(b) (1987). No interest provision is included by statute for specific legacies, and we have recognized that specific legacies ordinarily do not bear interest. *Bransford v. Jones*, 284 Ark. 121, 679 S.W.2d 798 (1984), *citing Atkinson, Law on Wills* (2d ed. 1953). The issue then is whether the $20,000 legacy in this case was a general or specific legacy.

■ The treatise, *Page on the Law of Wills*, has this to say about the distinction between specific and general legacies:

> A legacy which is payable in money may be specific if it is not payable out of the estate generally, but if it is a fund or a particular thing which is described with sufficient accuracy, and if the legacy can be satisfied only by the payment of such fund. A gift of money which is deposited in a specific bank, or a gift of cash on hand or in the bank, is a specific legacy. A gift of a specific fund, or a gift of the proceeds of specific property, or of a sum of money payable only out of such proceeds, and not out of the estate generally, is a specific legacy as distinguished on the one hand from a general legacy and from a demonstrative legacy on the other hand.

6 WILLIAM J. BOWE & DOUGLAS H. PARKER, PAGE ON THE LAW OF WILLS § 48.5, at 17–19 (3d ed. 1962). *See also* THOMAS E. ATKINSON, HANDBOOK OF THE LAW OF WILLS § 132, at 732–34 (2d ed. 1953). Here, the $20,000 legacy was not tied to a precise source but was payable out of the estate generally. We conclude that it constitutes a general legacy. Because we can discern no proof of the then prevailing legal rate of interest from the record in this case, interest should accumulate at the rate of six percent, with accrual beginning 15 months after the date of commencement of probate administration. Ark. Code Ann. § 28-53-112(a) (1987).

Gerald, as executor, did claim various offsets against the $20,000 legacy for debts owed by Dorothy to the estate. The probate court appeared to allow offsets for attorneys fees and the cost of replacing locks on the house. Nevertheless, the probate court ordered Gerald to pay the full $20,000 legacy plus interest. Under these facts, we consider the amount of the legacy to be sufficiently certain to accrue interest in accordance with § 28-53-112(a). Any claims by the estate against Dorothy should be handled as separate matters.

## III. Conclusion

The order of the probate court on the points raised in this appeal is affirmed in part and reversed in part, and we remand with directions to transfer the claims affecting administration of the testamentary trust to chancery court in accordance with this opinion. We further reverse the probate court on the assessment of an eight percent interest rate and direct that the appropriate interest rate to be applied in this case is six percent as set forth in § 28-53-112(a).

Affirmed in part. Reversed in part and remanded.