Jefferson D. GUESS, Jr. et al. *v.* Alice GOING

CA 97-1233 966 S.W.2d 930

Court of Appeals of Arkansas
Division I
Opinion delivered April 29, 1998

*Robert A. Newcomb*, for appellants.

*Friday, Eldredge & Clark*, by: *Scott J. Lancaster* and *Jeffrey H. Moore*, for appellee.

ANDREE LAYTON ROAF, Judge. Appellant Jefferson D. Guess, Jr., and other heirs to the estate of Anna Elizabeth Guess appeal an order of the Lonoke County Probate Court denying their request to remove appellee, Alice Going, as executrix of the estate, and appoint a substitute. On appeal they assert that the probate court erred in denying their request. We reverse.

Anna Elizabeth Guess lived a long and mostly independent life on a farm in Cabot. She raised seven children. By all accounts, she dealt with her descendants generously, loaning money and selling property on very favorable terms. For example, she allowed one son, Wayne, to trade a three-year-old Chevrolet pickup truck for ten acres of land in 1989, and grandson Doyle Guess, Jr., purchased a house and a half-acre of land in 1974, for $1,000 in cash and $100 per month for ten years.

In 1991, apparently at the behest of her daughter, Alice Going, Anna granted Going a durable power of attorney that remained in effect until her death. The event that motivated the giving of the power of attorney, according to Going, was a kitchen fire that resulted from Anna forgetting her meal on the stove. According to Anna's other daughter, Martha Blackwell, however, the reason for the power of attorney was Going's intention to prevent her from further disposing of her real estate after the trade of the pickup truck for ten acres of land. This view was shared by Doyle Guess, Jr., Wayne Guess, and Jeffrey Guess, Jr. According to these heirs, Going blocked several proposed land sales.

On March 31, 1994, however, Anna, then age 82, entered into a land-sale contract with Douglas Wayne Wilson and Cindy Going Wilson, Going's daughter. Pursuant to the agreement, which was prepared by Going, she conveyed her greatest asset, 85 acres of farmland, for $170,000. The agreement provided that the Wilsons were not required to make a payment of any kind until January 15, 1995. At that time, they would be required to begin making thirty-six monthly payments of $500. Only after they had made this interest-free "down payment," would they then be required to begin paying seven-percent interest on the $152,000 balance. The $152,000 was then to be amortized by monthly payments of $1,027.19, to be made over the next 28 and a half years.

On July 14, 1995, Anna signed a new will that Going had also prepared for her. According to Going, she patterned the new will after the previous will that had been prepared by a lawyer. The will only changed in two significant respects. It changed the distribution of certain property that was previously bequeathed to Paul Guess, Sr., who was deceased, to Paul Guess, Jr. It also shortened the distribution time from five years to one year.

Anna died on September 15, 1995. On September 26, 1995, Going petitioned the Lonoke County Probate Court to appoint her executrix and admit her mother's July 14, 1995, will to probate. An order admitting the will to probate and appointing Going executrix was signed that same day. On October 5, 1995, Jefferson D. Guess, Jr., Wayne Guess, Lewis Guess, Martha Guess Blackwell, Doyle Guess, Jr., and Sherry Guess Kwaitkowski (hereinafter Guess et al.) filed pleadings opposing the probate of the will and alleging lack of testamentary capacity, undue influence, and procedural defects in the execution. They also opposed the appointment of Going as executrix, asserting that Going refused to bring an action to set aside the land-sale agreement involving her daughter, which they contended was invalid due to lack of mental capacity, undue influence, and inadequacy of consideration, and was obtained by fraud. Guess et al. prayed that Lewis Guess, Wayne Guess, and Martha Guess Blackwell be appointed co-administrators of the estate. After a two-day trial, the probate court upheld the validity of the will and denied Guess et al.'s petition to replace Going as executrix.

As a preliminary matter, we first take up the question of whether there is a final appealable order from which this appeal is taken. Relying on *In re Estate of McLaughlin*, 306 Ark. 515, 815 S.W.2d 937 (1991), and on Ark. Code Ann. § 28-48-103(f) (1987), Going asserts that a petition for the appointment of an alternative executor or special administrator is not appealable. Central to Going's argument is an assertion that "No where in Appellants' Petition do they request the removal of Alice Going as Executrix." We find no merit to this argument.

It is obvious from reading the Guess *et al.*'s petition that they were not seeking the appointment of a special administrator. A special administrator is vested with much more limited authority than a general administrator. *See* Ark. Code Ann. § 28-48-103; *see also Newton County v. West*, 288 Ark. 432, 705 S.W.2d 887 (1986). While perhaps the pleading could have been better drafted, it made clear to the opposing party and to the trial court that Guess et al wanted the appointment of a different administrator.

Moreover, the probate court treated the pleading as a petition to remove Going as executrix, and it ruled on it as such. The denial or granting of a petition to remove an executor or administrator, other than a special administrator, is an appealable order. *Pickens v. Black*, 316 Ark. 499, 872 S.W.2d 405 (1994) (construing Ark. Code Ann. § 28-1-116 (1987)). Accordingly, we hold that the decision of the probate court was a final appealable order and proceed to the merits of this case.

Guess *et al.* argue that the probate court erred in not finding that Going's conflict of interest made her "unsuitable" to serve as executrix. They contend that this conflict arises from the fact that she drafted the land-sale agreement, and her "mother's love" precludes her from challenging an agreement that was extremely favorable to her daughter because she "naturally would not want to deprive her daughter of such a benefit." Moreover, Guess *et al.* argue that the probate court erroneously looked only to the purchase price for the property, and not the terms of the agreement or when the proceeds would become available to the heirs, in determining that Going had not wronged the estate in refusing

to challenge the agreement. In support of this argument, Guess *et al.* urge this court to resort to decisions from foreign jurisdictions to find that a conflict of interest is grounds for removal of an administrator. This is clearly not necessary.

■ An executor of an estate occupies a fiduciary position and must exercise the utmost good faith in all transactions affecting the estate and may not advance his own personal interest at the expense of the heirs. *Crider v. Simmons*, 192 Ark. 1075, 96 S.W.2d 471 (1936); *Warren v. Tuminello*, 49 Ark. App. 126, 898 S.W.2d 60 (1995). Personal representatives are directed by Arkansas's probate code to marshal all assets of the estate. Ark. Code Ann. § 28-49-101 (1987). It is clear that by not challenging the land-sale agreement, Going did not completely discharge her duty to marshal all assets of the estate.

In *Price v. Price*, 258 Ark. 363, 527 S.W.2d 322 (1975), the supreme court required a probate court to remove an administratrix who persistently acted in her own interests in order to deprive her stepchildren of their entitlement. We find the instant case analogous. Under the land-sale agreement, the heirs, almost all of whom are middle-aged or older, will likely not see the benefit of what would have been the estate's greatest asset.

■ Under Ark. Code Ann. § 16-48-105(a)(1) (1987), an administrator of an estate may be removed "When the personal representative becomes . . . unsuitable . . . [or] has failed to perform any duty imposed by law." In *In re Guardianship of Vesa*, 319 Ark. 574, 892 S.W.2d 491 (1995), the supreme court noted that the Arkansas probate code contains no definition of the term "unsuitable," but quoted with approval, as it had previously in *Davis v. Adams*, 231 Ark. 197, 328 S.W.2d 851 (1959), the definition of this term given by the Massachusetts Supreme Court in *Quincy Trust Co. v. Taylor*, 57 N.E.2d 573 (1944):

> The statutory word "unsuitable" gives wide discretion to a probate judge . . . . Such a finding may also be based upon the existence of an interest in conflict with his duty, or a mental attitude toward his duty or toward some person interested in the estate that creates reasonable doubt whether the executor or administrator will act honorably, intelligently, efficiently,

promptly, fairly, and dispassionately in his trust. It may also be based upon any other ground for believing that his continuance in office will be likely to render the execution of the will or the administration of the estate difficult, inefficient or unduly protracted. Actual dereliction in duty need not be shown.

319 Ark. at 581, 892 S.W.2d at 495.

Going admitted on direct examination that she was aware that all the other heirs wanted her to challenge the land-sale contract, but she refused to do it, in part, because it would affect her daughter. There can be no more explicit proof of a conflict of interest than this testimony.

■ ■ Although this court reviews probate cases *de novo*, *Warren v. Tuminello*, *supra*, an order of a probate court will not be reversed unless clearly erroneous. *Newton County v. West*, *supra*. Clearly erroneous means that although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Noland v. Noland*, 330 Ark. 660, 956 S.W.2d 173 (1997). We find that the probate court's refusal to replace Going as executrix was clearly erroneous.

■ We note that the probate court's decision to retain Going as administrator rested upon its determination that the land-sale agreement between Anna and the Wilsons was valid. However, when it did so, the probate court acted outside its jurisdiction. The probate court is a court of special and limited jurisdiction, and even though it is a court of superior and general jurisdiction within those limits, it has only such jurisdiction and powers as are expressly conferred by statute or the constitution, or necessarily incident thereto. *Hilburn v. First State Bank*, 259 Ark. 569, 535 S.W.2d 810 (1976).

■ ■ A probate court's jurisdiction extends only to heirs, distributees or devisees, beneficiaries, and claimants against an estate. *Id.* A probate court lacks jurisdiction to determine contests over property rights and titles between the personal representative and third parties or strangers to the estate. *Id.*, *McDermott v. McAdams*, 268 Ark. 1031, 598 S.W.2d 427 (Ark. App. 1980). Because the Wilsons were not heirs, distributees, devisees, or

beneficiaries of or claimants against Anna's estate, the probate court was without jurisdiction to determine the validity of the land-sale contract.

 Furthermore, it is well settled that while a probate court may apply equitable principles, it lacks jurisdiction to grant equitable relief. *Brown v. Imboden*, 28 Ark. App. 127, 771 S.W.2d 312 (1989); *Hilburn v. First State Bank, supra, McDermott v. McAdams, supra.* The action to set aside the land-sale agreement between Anna Guess and strangers to her estate properly belonged in chancery court. *See Dent v. Wright*, 322 Ark. 256, 909 S.W.2d 302 (1995); *Merrell v. Smith, Special Admr.*, 226 Ark. 1016, 295 S.W.2d 624 (1956); *Sykes v. Campbell*, 221 Ark. 858, 256 S.W.2d 320 (1953); *Petree v. Petree*, 211 Ark. 654, 201 S.W.2d 1009 (1947); *Beller v. Jones*, 22 Ark. 92 (1860); *Kelly's Heirs v. McGuire*, 15 Ark. 555 (1854). Any attempt to extend probate court jurisdiction without specific authority is void. *Carpenter v. Logan*, 281 Ark. 184, 662 S.W.2d 808 (1984).

 Accordingly, we reverse and instruct the probate court to appoint a suitable administrator for the estate of Anna Elizabeth Guess.

Reversed and remanded.

ROBBINS, C.J., and BIRD, J., agree.