Evelyn BALLETTI *v.* Audra MULDOON

CA 98–1098                          991 S.W.2d 633

Court of Appeals of Arkansas
Division I
Opinion delivered June 9, 1999
[Petition for rehearing denied July 28, 1999.]

*Frances Morris Finley*, for appellant.

*Hurst Law Offices*, by: *Q. Byrum Hurst, Jr.*, and *Tylar C.M. Tapp III*, for appellee.

JOHN MAUZY PITTMAN, Judge. This appeal is brought from an order of the Garland County Probate Court denying probate of the last will and testament of John Hollyfield. We reverse and remand.

John Hollyfield died on October 9, 1996. He was survived by four children: Joni Evans, Ginger Hollyfield, James Hollyfield, and appellee Audra Muldoon. On June 26, 1996, three and one-half months prior to his death, Hollyfield executed a will in which he devised his entire estate to the John E. Hollyfield Living Trust. That same day, he amended the trust to make his longtime companion, appellant Evelyn Balletti, its primary beneficiary. Following Hollyfield's death, Balletti filed a petition to probate the will. Her petition was contested by Hollyfield's children. After a hearing, the probate judge found that significant questions existed regarding Hollyfield's execution of the will and Hollyfield's mental capacity. He therefore refused to probate the will. On appeal, appellant contends that the will was executed in accordance with the law and that appellee failed to prove that Hollyfield lacked the testamentary capacity to make the will.

On June 28, 1994, Hollyfield established the John E. Hollyfield Living Trust to receive the benefits to which he was entitled under several family trusts. Although the record does not contain the terms of the Living Trust, we do know that First Commercial Trust Company was named as trustee. On the same day that he established the Living Trust, Hollyfield signed a will devising all of his property to the trust. The will named First Commercial as Hollyfield's personal representative. Unfortunately, Hollyfield did not sign the signature page of the will. However, he initialed each page and signed the last page containing an attestation clause. The will was drafted by attorney David Goldman. One of the witnesses to the will was Patti Frazier, a secretary in Goldman's office.

Approximately two years later, Hollyfield decided to amend the Living Trust to replace First Commercial with Boatmen's Bank as trustee. On or about June 7, 1996, he contacted Gold-

man's office and asked that the amendment be drafted quickly. According to Goldman's secretary, Barbara Funtenatto, Goldman was out of the office. Because Hollyfield was in a hurry, she drafted the amendment herself, with the advice and counsel of another lawyer that was familiar with trust work. She then gave the amendment to Hollyfield. Later, she showed the amendment to Goldman for his approval.

On June 21, Hollyfield was hospitalized with severe respiratory failure. According to Dr. George Queen, Hollyfield's physician for fifteen to twenty years, Hollyfield was seriously ill when admitted to the hospital. However, he improved over the next several days. During the course of his treatment, he received an antibiotic, a diuretic, a decongestant, Darvocet (a pain-killing drug), and Prednisone (an anti-inflammatory drug). Dr. Queen planned to release him from the hospital on July 4. However, on July 4, Hollyfield took a turn for the worse and was placed in the intensive-care unit. He remained hospitalized until August 1, approximately two months before his death.

On June 26, 1996, five days after he was hospitalized, Hollyfield executed the will that is the subject of this case. His execution of the will and several other documents that same day came about in the following manner. According to David Goldman, Hollyfield advised him that he wanted to revise his 1994 will and amend the terms of the Living Trust. Goldman drafted the necessary documents and directed Barbara Funtenatto and Patti Frazier to take them to the hospital for Hollyfield's signature. According to Funtenatto, she presented Hollyfield with three documents. The first was the revised will. It was the same in all material respects as the 1994 will except that it named Boatmen's Bank as personal representative rather than First Commercial. The second document was a re-typed version of the amendment that Funtenatto had prepared on June 7, which changed the trustee from First Commercial to Boatmen's. Funtenatto said that she had never been comfortable with the form of the amendment, so she re-typed it in the same format as the third document she was carrying, a second amendment to the Living Trust. This amendment apparently made several changes in the terms of the trust. It provided that, upon Hollyfield's death, appellant Evelyn Balletti

would receive $1,800 per month, plus the house that the two shared; an additional $300 per month if the house was not paid off at the time of Hollyfield's death; and all personal property and vehicles. The remainder of the trust property was to be distributed to Hollyfield's grandchildren. His children were to take nothing under the trust.

Funtenatto testified that she went over the documents with Hollyfield in a general way. According to her, he was already familiar with their contents. Hollyfield then signed the will. His signature was witnessed by Patti Frazier and by Doug Driggers, a patient representative at the hospital. Funtenatto notarized the signatures. The trust amendments, signed at the same sitting, did not require witnesses.

Later in the day on June 26, according to David Goldman, he was contacted by Hollyfield regarding an error in the second amendment. Goldman had mistakenly used the figure of $1,800 rather than $1,500 as the amount to be distributed to appellant. Goldman asked Funtenatto to make the necessary changes and take the corrected version to the hospital for Hollyfield's signature. She did so, saw Hollyfield sign the document, and notarized his signature the next day.

After his release from the hospital, Hollyfield executed no further documents pertaining to his will or his trust. There is no evidence that at any time prior to his death on October 9, 1996, he took any action to disavow the will or trust amendments he had executed on June 26.

After appellant filed her petition to probate the will and appellee filed her will contest, two days of hearings were held, several months apart. Appellee and her siblings contended that the signature on the will was suspect and that their father had been too ill to have the mental capacity to execute a will. The probate judge agreed and entered an order denying probate of the will. This appeal followed.

Before we begin our analysis of the issues, it is important to establish the scope of our review. We limit our decision to the efficacy of the 1996 will, not the 1994 will or the trust amend-

ments. The 1994 will was not the subject of appellee's contest. The efficacy of the trust amendments was outside the jurisdiction of the probate court, being a chancery matter. *See Schenebeck v. Schenebeck*, 329 Ark. 198, 947 S.W.2d 367 (1997). The probate judge recognized this and viewed the questions surrounding the trust amendments merely as evidence bearing on the validity of the will. We will do likewise.

▪ Probate cases are reviewed *de novo* on the record. *Guess v. Going*, 62 Ark. App. 19, 966 S.W.2d 930 (1998). However, an order of the probate court will not be reversed unless clearly erroneous. *Id.* Clearly erroneous means that, although there is evidence to support the court's findings, the appellate court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* In this case, although there is evidence to support the probate judge's decision, the evidence as a whole firmly convinces us that a mistake has been committed.

To explain the reasons behind our holding, we explore the manner in which the probate judge reached his decision. In his remarks at the close of the evidence and in his final order, the judge cited numerous factors that gave him pause concerning the genuineness of Hollyfield's signature on the will and Hollyfield's mental capacity. First, he was concerned that Barbara Funtenatto did not testify that she had taken a revised second amendment to Hollyfield until she was specifically asked about it at the second hearing. Secondly, he recalled appellant's testimony as being that the signature on the original second amendment was not Hollyfield's. Next, the court expressed concern that Patti Frazier had witnessed the 1994 will, even though Hollyfield had not properly signed the will. Further, the judge cited "the medication testimony and Dr. Queen's testimony." By "medication testimony," he is referring to the testimony of pharmacist Donald Cobb that a patient taking Darvocet and Prednisone would be mentally impaired to some extent. Finally, the judge discussed "the tremendous disparity" in Hollyfield's signatures between the time he entered the hospital on June 21 and his placement in intensive care on July 4. When Hollyfield checked into the hospital on June 21, he signed a patient questionnaire. On June 26, he allegedly executed the will and the trust amendments. On July 4, he signed a

procedure authorization form. According to the probate judge and the testimony at trial, the signatures differed considerably.

The above factors, coupled with Hollyfield's illness, led the court to conclude that serious doubts were raised about both the execution of the will and Hollyfield's capacity "which when taken together then results in the burden by the proponent . . . together with the countervailing evidence not having been met."

We first address the issues surrounding the genuineness of Hollyfield's signature on the will. Appellant argues that she proved the will was executed in accordance with the formalities of the law and that the probate judge should not have disregarded the testimony of the witnesses to the will. We agree. A will, other than a holographic one, must be executed by the signature of the testator and at least two witnesses. Ark. Code Ann. § 28-25-103(a) (1987). Appellant, who offered the will for probate, had the burden of proving the genuineness of Hollyfield's signature. *Ross v. Edwards,* 231 Ark. 902, 333 S.W.2d 487 (1960). We believe she met her burden in this case.

With due respect to the probate judge, the factors he mentioned as the bases for his ruling either have only the slightest probative value with regard to the signature on the will or they are based on a misunderstanding of law or fact. It is true that Barbara Funtenatto's credibility was compromised when she did not mention the revised second amendment at the first hearing. However, that fact has very little bearing on the question of whether Hollyfield actually signed his will. With regard to appellant's testimony that the signature on the original second amendment purportedly was not Hollyfield's, her testimony was not so unequivocal as the trial judge remembered. Her testimony was in fact unclear on this point. Although she expressed slight doubt that the signatures on the second amendments were the same, she did affirm that the signatures were "similar." As to Patti Frazier's witnessing of Hollyfield's signature on the 1994 will, the judge was apparently concerned that Frazier witnessed a will in which there was no testator's signature. Although Hollyfield did not sign the proper signature page, he initialed each page and signed an attestation page at the end of the will. Our supreme court has recog-

nized that such a signature may meet the formal requirements for executing a will. *See Scritchfield v. Loyd*, 267 Ark. 24, 589 S.W.2d 557 (1979). Therefore, it is not as if Frazier witnessed a document that was obviously invalid. Finally, the court's concern with the disparity in signatures on the documents signed while Hollyfield was hospitalized did not take into account that Hollyfield was in severe physical distress when he signed the June 21 and July 4 documents.

■ We fully understand the probate court's concern that something appeared amiss in the execution of the signatures of the trust amendments. However, when we focus solely on the signature to the 1996 will, we see that the only truly disinterested witness, Doug Driggers, testified that he saw Hollyfield sign the will. There is nothing in the record, as abstracted, that would merit disregarding Driggers's testimony, and on *de novo* review we find it to be persuasive. Further, the only other persons in the room, Barbara Funtenatto and Patti Frazier, testified that they also observed Hollyfield signing the will. David Goldman testified that he and Hollyfield had thoroughly discussed the revisions to be made to the will. The will was virtually identical to the one Hollyfield signed in 1994. Finally, Hollyfield made no attempt to change the will between the time he executed it and the time of his death, although he did return home, conduct other business, and receive visitors, including his attorney, without the appellant present. Although two of Hollyfield's children testified that the signature on the 1996 will was not his, they offered no basis for their testimony other than their bare assertions. Further, each admitted that she stood to benefit from such testimony. Upon our *de novo* review of the entire evidence, we hold that the probate judge's findings regarding the execution of the will are clearly erroneous.

■ Next, we address the issues concerning Hollyfield's testamentary capacity. If the maker of a will has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property and to comprehend how he is disposing of it, and upon what consideration, he possesses sufficient mental capacity to execute such instrument. *Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984). Appellant argues that the probate judge in this case erred by placing the burden of proof on her

to prove Hollyfield's mental capacity and that he erred in finding that Hollyfield was incompetent to execute his will. We agree with appellant on both counts.

■    With regard to the burden of proof, once the proponent of a will, such as appellant, shows that the will is rational on its face and has been executed and witnessed in accordance with the testamentary formalities, the party challenging the will's validity is required to prove by a preponderance of the evidence that the testator lacked mental capacity. *In re Estate of Davidson*, 310 Ark. 639, 839 S.W.2d 214 (1992). Appellant proved that the will was executed in accordance with the law. Therefore, the burden was appellee's to show that Hollyfield lacked the mental capacity to execute his will.

In its finding on this issue, the probate court relied on evidence that Hollyfield was ill on June 26, 1996, and on testimony by Donald Cobb that the drugs Hollyfield was taking could cause mental impairment. The evidence regarding the effect of Hollyfield's illness consisted primarily of the testimony of appellee and her sisters that their father was very ill and that, on or around June 26, he spoke of things in the past as though they were happening in the present. However, none of them could say with certainty that they saw their father on the 26th. Regarding Donald Cobb's testimony concerning the effects of Darvocet and Prednisone, he admitted that Dr. Queen would be in a better position than he to judge the effect of these drugs on Hollyfield. Dr. Queen testified that, while the drugs might cause impairment in some patients, he knew of nothing that would render Hollyfield incompetent to sign his will on June 26.

Evidence of Hollyfield's competency was offered by the only persons who were in the room with Hollyfield when he signed the will — Doug Driggers, Barbara Funtenatto, and Patti Frazier. Each of them said that Hollyfield was alert and aware of what he was doing when he signed the will. Further, David Goldman testified that, in his conversations with Hollyfield, he knew the contents of his estate and the objects of his bounty. According to Goldman, Hollyfield did not provide for his children in his Living Trust because they were already provided for by another family trust. Finally, the will Hollyfield executed on the 26th was virtu-

ally identical to the will he signed in 1994, a time when his competency was not questioned.

There is no doubt that Hollyfield was seriously ill at the time he executed his will and may have had some mental lapses during the course of his hospital stay. However, physical incapacity and partial eclipse of the mind will not invalidate a will if the testator has sufficient capacity to remember the extent and condition of his property and who his beneficiaries are. *Green v. Holland*, 9 Ark. App. 233, 657 S.W.2d 572 (1983). Likewise, proof of forgetfulness or abnormal acts does not necessarily establish a lack of testamentary capacity. *Rogers v. Crisp*, 241 Ark. 68, 406 S.W.2d 329 (1966).

Based upon the foregoing, we hold that the probate judge's finding that John Hollyfield lacked the capacity to execute his will was clearly erroneous.

Finally, we address appellee's contention that this case should be affirmed due to deficiencies in appellant's abstract. She complains that appellant did not abstract the pleadings or Hollyfield's medical records. We had no difficulty with the absence of the medical records from the abstract. They were sufficiently explained in the testimony of Dr. Queen. Regarding the pleadings, such as the petition to probate the will and the petition contesting the will, it would have been helpful if they had been abstracted. Generally, pleadings and the order appealed from are the bare essentials of an abstract. *See Warnock v. Warnock*, 336 Ark. 506, 988 S.W.2d 7 (1999); *Oliver v. Washington County*, 328 Ark. 61, 940 S.W.2d 884 (1997). Appellant provided us with the order appealed from but not the pleadings. Nevertheless, her omission was not so flagrant as to make a decision "well nigh impossible." *See Arkansas Department of Human Servs. v. Southerland*, 65 Ark. App. 97, 985 S.W.2d 336 (1999). Therefore, we decline to affirm on this basis.

For the reasons stated, the case is reversed and remanded with directions to enter an order consistent with this opinion.

Reversed and remanded.

STROUD and GRIFFEN, JJ., agree.